CATHOLIC SOCIAL SERVICES, INC., (Centro De Guadalupe Immigration Center); California Coalition of Welfare Center for Immigrants Rights, Inc.; Mercedes Aguilar De Lopez; Maria Teresa Reyes; and Sara Orantes De Palacios, Plaintiffs–Appellants and Cross–Appellees,

v.

Richard THORNBURGH, Attorney General of the United States of America, Defendant–Appellee and Cross–Appellant.

LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., Plaintiffs–Appellees,

v.

U.S. DEPARTMENT OF IMMIGRATION AND NATURALIZATION SERVICE, Defendant–Appellant.

Nos. 88–15046, 88–15127, 88–15128 and 88–6447.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 18, 1988.

Submission Withdrawn Jan. 6, 1989.

Resubmitted Feb. 5, 1992.*

Decided Feb. 13, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Scott R. McIntosh, U.S. Dept. of Justice, Washington, D.C., for Richard Thornburgh, defendant-appellee and cross-appellant, and for U.S. Dept. of I.N.S., defendant-appellant.

Ralph Santiago Abascal, and Stephen A. Rosenbaum, California Rural Legal Assistance, Michael Rubin, Altshuler, Berzon, Nussbaun, Berzon and Rubin, San Francisco, Cal. and Peter Schey, Center for Human Rights and Constitutional Law, Los Angeles, Cal., for Catholic Social Services, Inc., plaintiffs-appellants and cross-appellees, and League of United Latin American Citizens, plaintiffs-appellees.

Before GOODWIN, SNEED and HUG, Circuit Judges.

HUG, Circuit Judge:

The Immigration and Naturalization Service ("INS") appeals several district court orders resulting from successful class action challenges by aliens and immigration rights groups to the INS's implementation of the Immigration Reform and Control Act of 1986 ("IRCA" or "the Act"). In separate district court actions, Catholic Social Services, Inc. ("CSS") and the League of United Latin American Citizens ("LULAC") obtained declaratory and injunctive relief against the INS for its administration of IRCA's legalization program for aliens living illegally in this country. For certain aliens, the injunctions extended the period for filing legalization applications beyond the deadline set by the Attorney General. The United States contends that the district courts lacked jurisdiction under IRCA to hear the suits and that the courts exceeded their authority in extending the application period. CSS cross appeals, contending that the trial court erred in refusing to order the Government to allow all deported class members to reenter the United States to reap the benefits of the deadline extension. We conclude that the district courts had jurisdiction and affirm the judgments.

## I. BACKGROUND

In response to growing concerns over the influx of illegal aliens into the United States, Congress passed IRCA in 1986 as an amendment to the Immigration and Nationality Act of 1952. IRCA consists of two main parts. One part, not at issue here, imposes sanctions for the employment of undocumented aliens in American businesses. 8 U.S.C. § 1324a (1988). The other part established two provisions under which undocumented aliens could obtain legal resident status. The first provision, also not at issue here, was directed at special agricultural workers ("SAW"). 8 U.S.C. § 1160 (1988). The second provision set up a one-time only legalization program through which aliens could apply for lawful temporary resident status and then, after a one-year waiting period, could apply for permanent residency. 8 U.S.C. § 1255a (1988). The program required the alien to have resided continuously and unlawfully in the United States since January 1, 1982, 8 U.S.C. § 1255a(a)(2)(A), and to have been continuously physically present in the United States since November 6, 1986, the date of IRCA's enactment, 8 U.S.C. § 1255a(a)(3)(A). The Act provided that the aliens would have a twelve month period in which to file applications. The Act authorized the Attorney General to set the dates of the application period. 8 U.S.C. § 1255a(a)(1)(A). The Attorney General set the period to run from May 5, 1987, to May 4, 1988. See 8 C.F.R. § 245a.2(a)(1) (1988).

### A. The CSS Appeals

CSS initiated its action in the district court in November 1986 in response to the INS's administration of IRCA's provision concerning casual and innocent absences from the United States. Under IRCA, an alien could enjoy "brief, casual, and innocent absences" from the country without violating the continuous physical presence requirement. 8 U.S.C. § 1255a(a)(3)(B) (1988). In November 1986, in a nationwide telegram to its offices, the INS promulgated an interpretation of section 1255a(a)(3)(B) that required that aliens obtain INS approval, or "advance parole," before taking casual absences. The INS immediately enforced this interpretation and began to apprehend and deport aliens who left the United States after November 6, 1986, without receiving advance parole. CSS went to court to bar the implementation of this regulation.

On November 24, 1986, the district court provisionally certified the case as a class action and issued a temporary restraining order to prevent the INS from deporting aliens who were prima facie eligible for legalization except for an unauthorized absence from the United States. The Govern-

ment appealed that order to a motions panel of this court and sought a stay. That panel characterized the order as a preliminary injunction and issued a stay pending review. In April 1987, a merits panel of this court declined to address the dispute over the advance parole condition on the grounds that the district court had not had an opportunity to decide the issue or to resolve some factual questions. The panel limited its holding to the conclusion that the trial court had abused its discretion by finding that CSS was likely to succeed on the merits of the absence argument. It reversed the temporary restraining order and remanded the case for further consideration. Within a month of that decision, however, the INS announced that it would apply the advance parole provision only to aliens who departed or wished to depart the country after May 1, 1987. *See* 8 C.F.R. § 245a.1(g) (1991). In light of this change, the panel withdrew its opinion, which focused on the policy of requiring advance parole as of November 1986, but vacated the temporary restraining order and remanded the case without prejudice for further proceedings. *Catholic Social Services, Inc. v. Meese*, 820 F.2d 289 (9th Cir.1987).

Upon remand, the district court issued an order in May 1988, invalidating the INS's interpretation of section 1255a(a)(3)(B) and enjoining the INS from enforcing it. *See Catholic Social Services, Inc. v. Meese*, 685 F.Supp. 1149 (E.D.Cal.1988). On May 3, 1988, the court certified a class of plaintiffs consisting of "all persons prima facie eligible for legalization under INA § 245A [8 U.S.C. § 1255a] who departed and reentered the United States without INS authorization (i.e., "advance parole") after the enactment of IRCA following what they assert to have been a brief, casual and innocent absence from the United States." The Government does not challenge the court's invalidation of the INS's casual absence interpretation or the constitution of the certified class.

Both parties, however, find fault with the remedies ordered by the district court. The court issued its first of three remedial orders in June 1988. In that order the district judge instructed the INS to extend the filing deadline from May 4, 1988 to November 30, 1988, for class members who were deterred from seeking legalization by the INS's casual absences regulation.[1] The court, citing 8 U.S.C. § 1255a(a)(3)(C), refused to order readmission into the country of the subclass members who had been deported or allowed to voluntarily depart. CSS appeals this refusal to readmit class members living outside the United States.

Within days after the filing of the June order, the Supreme Court issued its decision in *Immigration and Naturalization Serv. v. Pangilinan*, 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988). The Government immediately moved the district court to dissolve the extension of the application deadline on the grounds that it violated *Pangilinan*. When the court had not acted on the motion by August 8, 1988, the Government withdrew the motion and filed the first of its two appeals.

On August 11, 1988, the trial court entered the second and third of its remedial orders, which took the form of supplements to the June injunction. In the first August order, the court concluded that *Pangilinan* did not invalidate the deadline extension. Acknowledging that its decision might be reversed, however, the court provided for an alternative remedy, which would have prohibited the INS from deporting or removing from the country any class member on grounds related to the CSS litigation and would have obligated the INS to provide class members with permanent work authorization documents. Since we find the extension appropriate, we need not consider the alternative remedy. In the second August order, the court mandated a set of procedures for the INS to use in determining whether an apprehended alien fell under the scope of the June injunction. The Government's second appeal in this case challenges the August orders.

---

1. The court chose November 30, 1988, to coincide with the cut-off date under 8 U.S.C. § 1160(a)(1)(A) (1988) for legalization applications from special agricultural workers.

After receiving the three appeals discussed above, we granted first a temporary stay of the original injunction and its supplements, and then a stay for the pendency of the appeal. We also directed the INS to release detained class members and grant them temporary work permits until we resolved this case.

Shortly before oral argument, we ordered the parties to brief the impact of IRCA's judicial review provisions, 8 U.S.C. §§ 1255a(f)(1)–(4) on the case. We withdrew submission pending Supreme Court decisions in *McNary v. Haitian Refugee Center, Inc.*, —— U.S. ——, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) and *Ayuda, Inc. v. Thornburgh*, —— U.S. ——, 111 S.Ct. 1068, 112 L.Ed.2d 1174 (1991). We now resubmit the case. The Government contends that those provisions barred district court jurisdiction over the suits. CSS and LULAC argue that the review provisions have no impact on the trial court's subject matter jurisdiction.

### B. *The LULAC Appeal*

The events leading up to LULAC's appeal are considerably less involved than in CSS.[2] LULAC filed its suit in July 1987, challenging the validity of the INS's fraudulent reentry regulation. As noted above, IRCA required an alien seeking legalization to show that he or she had resided continuously and unlawfully in the United States since January 1, 1982. *See* 8 U.S.C. § 1255a(a)(2)(A) (1988). In August 1987, the INS issued 8 C.F.R. § 245a.2(b)(8) (1991), which had the effect of declaring statutorily ineligible for legalization any alien who left the United States and reentered using any sort of fraudulent visa or fraudulent INS documentation. The INS apparently reasoned that reentry by use of a fraudulent but facially valid immigration document was constructively lawful and therefore interrupted the continuous unlawful residency requirement. Several aliens and LULAC sued to invalidate this regulation as contrary to IRCA and the Equal Protection Clause.

In October 1987, before the district court heard the action, the INS changed the fraudulent reentry policy. Under the new policy, announced at 8 C.F.R. §§ 245a.2(b)(9) and (10) (1991), an alien entering under a fraudulent document would be eligible for legalization but had to apply for a waiver excusing the fraud. The LULAC plaintiffs responded to the change by amending their complaint to seek a declaratory judgment that the original regulation had been invalid.

In July 1988, the district court granted the plaintiffs' motion for class certification and rendered its decision. The court found that the first fraudulent reentry regulation conflicted with IRCA but that the waiver revision was valid. After directing the parties to submit additional briefing on the issue of an appropriate remedy and specifically instructing them to consider the effect of *Immigration and Naturalization Serv. v. Pangilinan*, 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988), the court ordered a remedy similar to the injunction awarded to CSS. It directed the INS to extend the application deadline from May 4 to November 30, 1988 for aliens in the certified class who qualified for legalization but were deemed ineligible for it under the original reentry policy. In reaching its decision, the court found that it had subject matter jurisdiction and that *Pangilinan* did not bar the extension.

The Government appeals the August order. It challenges both the jurisdiction ruling and the deadline extension. The parties agreed to a stay of the injunction during the pendency of this review.

■ We consolidated the appeals in CSS and LULAC because they present substantially the same legal issues. We are called upon to decide whether the district courts in these cases had jurisdiction to hear the suits and whether the injunctive remedies they issued can stand. We also address the issue of whether the district court in CSS properly denied reentry to aliens residing outside the country. Our jurisdiction

---

**2.** We note that the parties in LULAC stipulated to the dismissal of the organizational plaintiffs. For the sake of convenience, we will continue to refer to the case as "LULAC."

to review the CSS injunction is provided by 28 U.S.C. § 1292(a)(1) (1988). We review the LULAC order under 28 U.S.C. § 1291 (1988).[3] We consider each issue in turn.

## II. *JURISDICTION*

■ The threshold issue in this case is whether the district courts had jurisdiction to hear the suits filed by CSS and LULAC. CSS and LULAC contend that the district courts had federal question jurisdiction under 28 U.S.C. § 1331. The Government argues that IRCA provisions preclude jurisdiction in this case.

IRCA's provisions for judicial review of legalization determinations are found in 8 U.S.C. § 1255a(f). Administrative and judicial review of a legalization determination can occur only as prescribed by section 1255a(f). 8 U.S.C. § 1255a(f)(1). Section 1255a(f)(2) provides: "No denial of adjustment of status under this section based on

a late filing of an application for such adjustment may be reviewed by a court of the United States or of any State or reviewed in any administrative proceeding of the United States Government." An application denied for other reasons may be reviewed by an administrative appellate authority, 8 U.S.C. § 1255a(f)(3)(A), and then by a court of appeals, 8 U.S.C. § 1255a(f)(4)(A).[4]

The Supreme Court's holding in *McNary v. Haitian Refugee Center, Inc.,* — U.S. ——, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), is instructive. In *McNary* the Supreme Court considered the IRCA review provisions for special agricultural workers ("SAW"). Those SAW review provisions, as set forth in 8 U.S.C. § 1160(e),[5] are substantially the same as the review provisions at issue in the instant case except that the SAW review provisions do not have a timely application provision. In

---

3. The injunction in CSS does not resolve all the issues in the case, *Catholic Social Services,* 685 F.Supp. at 1151, and therefore reaches us as an interlocutory appeal. The LULAC injunction does dispose of all the issues raised before the trial court. We note, however, that the court in LULAC did not enter a separate judgment pursuant to Fed.R.Civ.P. 58. Since both parties and the district court treated the injunction as the final decision in the case, and neither party objected to the taking of an appeal, we deem the separate-judgment requirement waived and assume jurisdiction under section 1291. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 386–88, 98 S.Ct. 1117, 1120–22, 55 L.Ed.2d 357 (1978).

4. Under 8 U.S.C. § 1255a(f)(4)(A), judicial review is governed by 8 U.S.C. § 1105a. Section 1105a states that review (of a denial) is available in federal courts only after the alien has exhausted all administrative remedies. 8 U.S.C. § 1105a(c). Administrative appellate review of legalization determinations is based solely upon the administrative record and upon additional or newly discovered evidence that was not available at the time of the determination. 8 U.S.C. § 1255a(f)(3)(B). Judicial review is based solely upon the administrative record established at the time of the administrative appellate review unless the applicant establishes that there was an abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record as a whole. 8 U.S.C. § 1255a(f)(4)(B).

5. Section 1160(e) provides:
 (1) Administrative and judicial review

There shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection.
(2) Administrative review
 (A) Single level of administrative appellate review
 The Attorney General shall establish an appellate authority to provide for a single level of administrative appellate review of such a determination.
 (B) Standard for review
 Such administrative appellate review shall be based solely upon the administrative record established at the time of the determination on the application and upon such additional or newly discovered evidence as may not have been available at the time of the determination.
(3) Judicial review
 (A) Limitation to review of exclusion or deportation
 There shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation under section 1105a of this title.
 (B) Standard for judicial review
 Such judicial review shall be based solely upon the administrative record established at the time of the review by the appellate authority and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole.

*McNary*, the action alleged a pattern or practice of due process violations by the INS in its administration of the SAW program. 111 S.Ct. at 893–94. The Government argued that the judicial review provisions precluded the district court from exercising general federal question jurisdiction over the action. *Id.* at 896. The Court held that review was permissible because the review provisions applied "only to review of denials of *individual* SAW applications." *Id.* at 897 (emphasis added).

The *McNary* Court's decision was based on "the absence of clear congressional language mandating preclusion of federal jurisdiction." *Id.* at 892. The Court explained:

> The critical words in § 210(e)(1), however, describe the provision as referring only to review "of *a determination* respecting *an application*" for SAW status (emphasis added). Significantly, the reference to "a determination" describes a single act rather than a group of decisions or a practice or procedure employed in making decisions. Moreover, when § 210(e)(3), see 8 U.S.C. § 1160(e)(3), further clarifies that the only judicial review permitted is in the context of a deportation proceeding, it refers to "judicial review of *such a denial*"—again referring to a single act, and again making clear that the earlier reference to "a determination respecting an application" describes the denial of an individual application.

*Id.* at 896.

The Court continued:

> This reading of the Reform Act's review provision is supported by the language in § 210(e)(3)(B) of the INA, which provides that judicial review "shall be based solely upon the administrative record established at the time of the review by the appellate authority and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole." 8 U.S.C. § 1160(e)(3)(B). . . .

Because the administrative appeals process does not address the kind of procedural and constitutional claims respondents bring in this action, limiting judicial review of these claims to the procedures set forth in § 210(e) is not contemplated by the language of that provision.

*Id.* at 896–97.

The Court recognized "that had Congress intended the limited review provisions of § 210(e) of the INA to encompass challenges to INS procedures and practices, it could easily have used broader statutory language." *Id.* at 897.

All of the court's considerations in *McNary* apply with equal force in the instant case. The references in § 1255a(f) to "a determination respecting an application," 8 U.S.C. § 1255a(f)(1), and to a "denial of adjustment of status," 8 U.S.C. § 1255a(f)(2), are relevant to an individual legalization determination, but not to a case such as this one where the INS's regulations are being challenged. Moreover, the administrative record and appeals process would be of no help in addressing the constitutional and statutory claims brought in this case. If Congress wanted the IRCA review provisions to apply to challenges of INS regulations implementing IRCA, it could have used broader statutory language.

The Government urges us to follow the D.C. Circuit's recent decision in *Ayuda, Inc. v. Thornburgh*, 948 F.2d 742 (D.C.Cir. 1991). We decline to do so. The D.C. Circuit addressed the same jurisdictional issues presented in this case. The Supreme Court had vacated the D.C. Circuit's original decision in *Ayuda* and remanded the case for reconsideration in light of *McNary. See Ayuda, Inc. v. Thornburgh,* 880 F.2d 1325 (D.C.Cir.1989), *vacated and remanded,* — U.S. ——, 111 S.Ct. 1068, 112 L.Ed.2d 1174 (1991). On remand, the D.C. Circuit held that the district court's jurisdiction was barred by 8 U.S.C. § 1255a(f)(1) and 8 U.S.C. § 1255a(f)(2). 948 F.2d at 759. In a well-reasoned opinion, Judge Wald dissented. *Ayuda,* 948 F.2d at 760 (Wald, J., dissenting).

In reaching its decision, the *Ayuda* majority concluded that *McNary* does not draw a distinction between individual and class-wide claims, but instead draws "a distinction between collateral issues (which might normally be procedural) and those that go to the heart of an applicant's claim." *Id.* at 749. We find no basis for such an interpretation of *McNary*. The Supreme Court in *McNary* did not draw a distinction between collateral issues and issues that go to the heart of the claim.

The Court did, however, hold that IRCA's SAW review provisions apply "only to review of denials of *individual* SAW applications." [6] *McNary*, 111 S.Ct. at 897 (emphasis added). As discussed above, the review provisions in section 1255a(f) refer only to determinations of individual applications. We therefore hold that section 1255a(f) does not apply to this case.

## III. *EXTENDING THE TIME PERIOD FOR AMNESTY APPLICATIONS*

 The Government contends that the court's equitable powers do not include the power to extend the time period for applying for amnesty. In support of its argument, the Government relies on *Immigration and Naturalization Serv. v. Pangilinan*, 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988). In *Pangilinan*, sixteen Filipino nationals who served with the United States Armed Forces during World War II sought United States citizenship pursuant to sections 701 to 705 of the Nationality Act of 1940, Ch. 876, 54 Stat. 1137, as amended in 1942 by the Second War Powers Act, Ch. 199, 56 Stat. 182, *codified at* 8 U.S.C. §§ 1001–1005 (repealed 1952). The amended Act provided lenient rules for naturalizing aliens who served in the United States Armed Forces during World War II. Section 702 authorized representatives to receive petitions, conduct hearings and grant naturalization outside of the United States. In August 1945, a representative was designated to naturalize aliens in Manila. *Pangilinan*, 486 U.S. at 879, 108 S.Ct. at 2213. In October 1945, the Manila representative's authority was revoked. *Id.* at 879–80, 108 S.Ct. at 2213–14. Although naturalization officers were continuously available outside of the Philippines, a new representative was not appointed to Manila until August 1946. The new representative naturalized approximately 4,000 Filipinos before the Act's expiration on December 31, 1946. *Id.* at 880, 108 S.Ct. at 2214. Over thirty years later, the plaintiff Filipinos sought naturalization under the expired 1940 Act even though they had not applied for naturalization before the Act's expiration date. *Id.* The Supreme Court held that naturalization of the Filipino plaintiffs would not be an appropriate equitable remedy. *Id.* at 885, 108 S.Ct. at 2216–17.

The Government's reliance on *Pangilinan* in the present case is misplaced for several reasons. First, unlike that in *Pangilinan*, the remedy ordered by the district courts here is not naturalization. The Supreme Court's decision in *Pangilinan* was primarily based on its conclusion that "the power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *Id.* at 883–84, 108 S.Ct. at 2215–16. The district court's orders here do not purport to grant citizenship to anyone. They simply order the INS to consider applications. As the Supreme Court recognized in *McNary:*

> [T]he individual respondents in this action do not seek a substantive declaration that they are entitled to SAW status. Nor would the fact that they prevail on

---

**6.** The D.C. Circuit's majority opinion is partly based on the fact that *McNary* was not concerned with 8 U.S.C. § 1255a(f)(2). Section 1255a(f)(2) is not relevant to the instant case. Section 1255a(f)(2) states, "No *denial of adjustment* of status under this section based on a late filing of an *application* for such adjustment may be reviewed by a court of the United States or of any State or reviewed in any administrative proceeding of the United States Government." 8 U.S.C. § 1255a(f)(2) (emphasis added). Like the other IRCA provisions, the language of section 1255a(f)(2) contemplates an *individual* determination of an alien's application. In the instant case an individual denial of application is not at issue. Section 1255a(f)(2) is therefore inapposite.

the merits of their purportedly procedural objections have the effect of establishing their entitlement to SAW status. Rather, if allowed to prevail in this action, respondents would only be entitled to have their case files reopened and their applications reconsidered in light of the newly prescribed INS procedures.

*McNary*, 111 S.Ct. at 898. *See also Ayuda*, 948 F.2d at 766 (Wald, J., dissenting) ("These petitioners are not seeking an ultimate determination of their eligibility for legalization, only a ruling that they could not be turned away at the door. . . .").

Second, in contrast to *Pangilinan*, extending the application time here effectuates, rather than frustrates, the public policy established by Congress. In *Pangilinan*, the expiration date was part of section 702. 486 U.S. at 882, 108 S.Ct. at 2215. Congress clearly intended that applications not be accepted after the December 31, 1946 expiration date. Therefore, extending the deadline in *Pangilinan* would have frustrated congressional intent. *Id.* at 883, 108 S.Ct. at 2215. Congressional intent was followed because the plaintiffs had "ample opportunities," *id.* at 885, 108 S.Ct. at 2216–17, to apply for naturalization before the expiration date.

In IRCA, Congress did not provide a specific cutoff date for amnesty applications. The Act establishes a twelve-month period for aliens to apply for amnesty. 8 U.S.C. § 1255a(a)(1)(A). It does not contain a specific deadline. Moreover, the Judiciary Committee intended "that the legalization program should be implemented in a liberal and generous fashion." H.R.Rep. No. 99–682(I), 99th Cong., 2d Sess. 72 (1986), *reprinted in,* 1986 U.S. Code Cong. & Admin. News 5649, 5676. Thus, Congress clearly intended for illegal aliens to have ample and meaningful opportunities to apply for adjustments of status. The members of the plaintiff class did not have such opportunities because the INS's interpretation of the "brief, casual and innocent" provision was not invalidated until the Attorney General's deadline had almost expired.

Furthermore, in *Pangilinan*, the Court found that Congress clearly chose not to extend the deadline for Filipinos who had not been naturalized before the 1940 Act's expiration date. When Congress enacted a new citizenship program in 1948, it excluded Filipino servicemen and specifically provided that applications that were still pending would be adjudged under the new provisions. Act of June 1, 1948, ch. 360, 62 Stat. 281. *See Pangilinan*, 486 U.S. at 884, 108 S.Ct. at 2216.

In contrast to *Pangilinan*, Congress's decision not to extend the amnesty deadline set by the Attorney General was not intended to prevent the class members from applying for adjustments of status after the Attorney General's deadline. Congress was aware of the plight of persons like those in the plaintiff class when it voted to deny the extension. The members of Congress chose not to grant a general extension because they believed that the courts could provide an equitable remedy. Senator Grassley, an outspoken opponent of the extension, argued:

> [T]he proponents argue that certain court decisions recently handed down now make some 75,000 persons eligible for the legislation program. There may very well be equitable reasons to allow these individuals to apply; but there is no doubt that the courts are well equipped to evaluate equitable considerations. The Senate need not enact a broad extension to accommodate certain litigants.

134 Cong. Rec. S5037–01.

The INS misinterpreted IRCA and the plaintiffs acted quickly to remedy the misinterpretation. Congress intended for aliens to have a twelve-month period in which to apply for legalization and specified that the legalization program be implemented in a liberal and generous fashion. The INS's erroneous interpretation of the Act in reality deprived the aliens of the full twelve-month application period Congress had provided for them. It would be contrary to congressional intent to foreclose these aliens' applications. The equitable remedy provided by the two district courts

is appropriate. Because the initial time period provided in the injunctions has expired, the actions are remanded to the district courts to revise the injunctions to provide an equivalent extension of the application period.

## IV. *THE CROSS–APPEAL*

■ The district court denied an injunction ordering the Government to permit class members outside the United States to enter the United States in order to file applications for adjustment of status. Catholic Social Services appeals that decision. We affirm the denial.

The Government bases its opposition to the injunction on 8 § U.S.C. 1255a(a)(3)(C). That section of IRCA states: "Nothing in this Section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for adjustment of status under this subsection." Thus, although the statute does not authorize admission to the United States, it does not prohibit admission either. Therefore, section 1255a(a)(3)(C) does not provide a basis for our decision.

We do not know whether all of the class members are eligible for admission to the United States. Congress has established eligibility requirements for admission into the United States. *See* 8 U.S.C. § 1182. If we were to allow all of the class members to enter the United States, the admission of some of the aliens might violate the admission requirements. We have no way of knowing whether each of these class members is eligible for admission under these requirements. We therefore do not decide whether any class member is eligible for admission.

■ Moreover, some of the class members have been deported. If we were to order admission of these aliens, we would, in effect, be reviewing and reversing their deportation orders. As a general rule, we may not review deportation orders of aliens

who have departed the United States after the order has been issued, although there are some exceptions. *See, e.g., Wiedersperg v. Immigration and Naturalization Serv.,* 896 F.2d 1179 (9th Cir.1990) (alien could reopen deportation proceedings after the conviction that was the basis for his deportation was vacated, since the departure therefore was not legally executed). We do not know whether any class member is eligible to challenge his or her deportation order under an exception to this general rule, and we express no opinion in this regard.

THE JUDGMENTS ARE: AFFIRMED AND REMANDED FOR ADJUSTMENT OF TIME PERIODS SPECIFIED IN THE INJUNCTIONS.