972 F.2d 1122
 Marta ZAMBRANO; Margarita Rodriguez; Graciela Lopez;
Andrea Ruiz; Martha Ozuna; Jorge Perdomo,
Plaintiffs-Appellants,
v.
IMMIGRATION & NATURALIZATION SERVICE; Alan Nelson; Harold
Ezell, Defendants-Appellees.
Marta ZAMBRANO, Plaintiff-Appellant,
v.
IMMIGRATION & NATURALIZATION SERVICE, Defendant-Appellee.
Marta ZAMBRANO; Margarita Rodriguez; Graciela Lopez;
Andrea Ruiz; Martha Ozuna; Jorge Perdomo,
Plaintiffs-Appellees,
v.
IMMIGRATION & NATURALIZATION SERVICE; Richard L.
Thornburgh, Attorney General of the United States;
Alan Nelson; Harold Ezell,
Defendants-Appellants.
 Nos. 90-15274, 90-15298 and 89-16014.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 14, 1992.
Decided Aug. 19, 1992.
 
 Robert Kendall, Jr., Asst. Director, Office of Immigration Litigation, Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellants/cross-appellees.
 Pauline Gee, California Rural Legal Assistance, Marysville, Cal., Stephen A. Rosenbaum, California Rural Legal Assistance, San Francisco, Cal., Vibiana Andrade, Mexican American Legal Defense & Educ. Fund, Los Angeles, Cal., for plaintiffs-appellees/cross-appellants.
 Appeal from the United States District Court for the Eastern District of California.
 Before: HALL and WIGGINS, Circuit Judges, and MUECKE, District Judge.*
 WIGGINS, Circuit Judge:
 
 
 1
 The Immigration and Naturalization Service ("INS") appeals a permanent injunction issued by the district court ordering it (1) to accept Immigration Reform and Control Act ("IRCA") applications filed after the statutory deadline and (2) to provide a list of aliens whose IRCA applications were denied based on two invalid INS regulations. Appellee cross appeals the denial of its motion for civil contempt based on the INS's alleged failure to comply with the court's injunction. This court has jurisdiction under 28 U.S.C. § 1291. We affirm the judgment of the district court.
 
 BACKGROUND
 
 2
 This case arises out of the INS's administration of IRCA. IRCA was intended to provide long-standing illegal aliens with an opportunity to become legal residents of the United States. There are four basic elements required to qualify for legalization under IRCA. The alien must apply for legalization within the specified time period of May 5, 1987, and May 4, 1988. The alien must establish that he has resided in the United States illegally since January 1, 1982. The alien must establish that he has been present in the United States continuously since the enactment of IRCA on November 6, 1986. Finally, the alien must establish that he is admissible to the United States as an immigrant. If the alien establishes these elements then the alien is eligible to have his status adjusted to that of a temporary resident alien.
 
 
 3
 Under the fourth element, an alien must establish that he is admissible to the United States as an immigrant. An alien is admissible if he does not fall under one of the several existing grounds for exclusion set forth in section 212(a) of the Act. 8 U.S.C. § 1182(a). The exclusion set forth in section 212(a)(15), which precludes admissibility for aliens who are likely at any time to become public charges is the exclusion at issue in this case. Under IRCA, Congress created a special rule with respect to the public charge exclusion. Section 245A(d)(2)(B)(iii) of the Act, 8 U.S.C. § 1255a(d)(2)(B)(iii), provides that an alien who cannot meet the traditional public charge standard is still eligible for legalization if he can demonstrate an employment history in the United States evidencing self support without public assistance. However, even if the alien falls under one of the exclusions, he may still be legalized if he applies for, and the Attorney General grants, a waiver under section 245A(d)(2) of the Act. 8 U.S.C. § 1255a(d)(2).
 
 
 4
 This case arises out of a class action suit against the INS based on the INS's promulgation of two illegal regulations which unduly restricted the eligibility of illegal aliens for legalization under IRCA. The regulations were related to the public charge exclusion and dealt with "proof of financial responsibility" and "public cash assistance." The district court certified two classes of plaintiffs. Class 1 plaintiffs were those aliens who applied for legalization and were denied based on the application of the illegal regulations. Class 2 plaintiffs were those aliens who were discouraged from applying due to the illegal regulations.
 
 
 5
 The district court determined that the regulations were inconsistent with the statute and therefore invalid. The court permanently enjoined the INS from using the regulations in evaluating IRCA applications within the Ninth Circuit. The district court then ordered the INS to process Class 1 applications under the proper public charge standard and to accept and process Class 2 applications under the proper public charge standard. The court based its order with respect to Class 2 on the doctrine of equitable tolling. The district court also ordered the INS to provide a list of the names and addresses of the Class 1 members to the court and the class counsel.
 
 
 6
 Some portions of the permanent injunction were stayed by agreement of the parties pending appeal. Others were not. The portion of the order requiring the INS to accept and process applications from Class 2 members was not stayed. However, the INS refused to accept applications from alleged Class 2 members who had received noncash public assistance. Counsel for the plaintiffs brought a motion for civil contempt against the INS which was denied by the district court. The court held that the permanent injunction applied only to those aliens who had received public cash assistance. The court subsequently denied a motion for reconsideration and this appeal ensued.
 
 DISCUSSION
 
 7
 I. Under Catholic Social Services, Section 1255a(f)(1) and (2) Did Not Preclude The District Court From Exercising Jurisdiction In This Case
 
 
 8
 This court has recently addressed this jurisdictional issue in Catholic Social Services, Inc. v. Thornburgh, 956 F.2d 914 (9th Cir.1992). In Catholic Social Services, the court held that § 1255a(f)(1) and (2) did not bar jurisdiction over collateral challenges to the practices and procedures of the INS in its administration of IRCA. Id. at 921. Therefore, we hold that the district court had jurisdiction to hear this case.
 
 
 9
 II. The District Court Did Not Err In Extending The Statutory Time Deadline For IRCA Applications
 
 
 10
 This court has also recently resolved this precise issue in Catholic Social Services. In that case, the court held that a district court could properly extend the statutory deadline for applications under IRCA. The court found that the government's reliance on INS v. Pangilinan, 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1987), was misplaced as the district court did not order naturalization of the plaintiffs but simply extended the applications deadline. The court also noted that its case differed from Pangilinan in that the extension of the IRCA application deadline effectuated rather than frustrated the public policy established by Congress under IRCA. Thus, the court affirmed the district court's extension of the deadline. Catholic Social Services, 956 F.2d at 921-23.
 
 
 11
 We are presented with the same question in this case: whether a district court may properly extend the statutory deadline for IRCA applications. Catholic Social Services is the law of the circuit. Therefore, we affirm the district court.
 
 
 12
 III. The District Court Did Not Err In Ordering The INS To Produce The Names Of All Class 1 Plaintiffs
 
 
 13
 IRCA contains a confidentiality provision which prohibits the publication or use of information furnished pursuant to an IRCA application. 8 U.S.C. § 1255a(c)(5). The confidentiality provision was enacted to encourage illegal aliens to come forward and apply for legalization. Its purpose was to assuage the fear that the government might utilize the information provided to deport applicants. The provision was intended, therefore, to shield the information provided from the Attorney General and other governmental entities. As the district court pointed out, the provision was not intended to be a confidentiality provision at all, but rather a prohibition against the use of the information by the government to prosecute, deport or otherwise penalize illegal aliens who applied for legalization. H.R.Rep. No. 682(I), 99th Congress 2d. Sess. 73 (1986), reported in 1986 U.S.C.C.A.N. 5649, 5677.
 
 
 14
 The INS argues that the provision acts as a complete bar to the disclosure of the names to the district court and class counsel. The INS relies primarily on Baldrige v. Shapiro, 455 U.S. 345, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982), to support its argument. As will be shown below, the INS's reading of both the confidentiality provision and Baldrige is incorrect.
 
 
 15
 The confidentiality provision is not violated by the court ordered discovery of the names of the Class 1 plaintiffs. There are three forms of confidentiality provisions which have been utilized by Congress. See Association for Women in Science v. Califano, 566 F.2d 339, 346 (D.C.1977). First, there are provisions which expressly bar disclosure in legal proceedings. See e.g., 45 U.S.C. § 41 (railroad accident investigation reports may not be disclosed). Second, there are provisions which expressly allow for disclosure in legal proceedings. See e.g., 8 U.S.C. § 1202(f) (state department visa records may be disclosed to a requesting court). Finally, there are those provisions which are silent on the issue of disclosure during legal proceedings. See e.g., 8 U.S.C. § 1160(b)(6) (prohibiting disclosure of information in SAW applications under IRCA without addressing issue of disclosure in a legal proceeding). The confidentiality provision at issue here is of the third variety.
 
 
 16
 The Supreme Court has held that statutes prohibiting general disclosure of information do not bar judicial discovery absent an express prohibition against such disclosure. St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). The Court stated that courts should avoid construing a confidentiality provision so that it would "suppress otherwise competent evidence unless the statute, strictly construed, requires such a result." Id. at 218, 82 S.Ct. at 295.
 
 
 17
 In Freeman v. Seligson, 405 F.2d 1326 (D.C.Cir.1968), the D.C. Circuit in applying St. Regis stated that "where Congress has thought it necessary to protect against court use of records it has expressly so provided by specific language." Id. at 1351. This reading of St. Regis has also been applied by the Eleventh Circuit in In re Nelson, 873 F.2d 1396 (11th Cir.1989). In Nelson, the Eleventh Circuit addressed the question of whether the confidentiality provision for SAW applications, another IRCA confidentiality provision, prohibited judicial disclosure. The court held that the statute did not prohibit judicial disclosure as it contained no specific language barring such a disclosure. Therefore, the court ruled that the district court did not err in ordering disclosure of application information to an aliens' counsel. Id. at 1397. As in Nelson, the provision at issue here does not specifically prohibit judicial disclosure. We agree with the D.C. Circuit and the Eleventh Circuit and hold that the district court's order did not violate section 1255a(c)(5).
 
 
 18
 The INS claims that Baldrige v. Shapiro, 455 U.S. 345, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982) is controlling in this case. The INS's reliance on Baldrige is inapposite. The confidentiality provision in Baldrige is similar to the one at issue in this case. However, there is one critical difference. The provision in Baldrige contains an express prohibition against the production of Census information in judicial proceedings. 13 U.S.C. § 9(a). Thus, Baldrige falls squarely within the exception the Court identified in St. Regis. The Court stated that judicial disclosure may be prohibited where the statute expressly requires such a result. While the statute in Baldrige does specifically require such a result, the IRCA provision at issue here has no specific language prohibiting judicial disclosure. Furthermore, the purpose of the IRCA confidentiality provision is "to assure applicants that the legalization process is serious, and not a ruse to invite undocumented aliens to come forward only to be snared by the INS." 1986 U.S.C.C.A.N. 5677. Thus, the district court was correct that because "plaintiffs in this case are the aliens whose interests are protected by the statute, ... [p]roviding the names of class members to class counsel facilitates, rather than frustrates, the legislative intent of the statute." Therefore, Baldrige is not applicable to this case, and the district court did not err in ordering the INS to produce the names of the Class 1 plaintiffs.
 
 
 19
 IV. The District Court Did Not Err In Denying The Request For A Contempt Order
 
 
 20
 The district court properly denied the plaintiffs' motion for a contempt order. The plaintiffs argue that the court erred as a matter of law in construing its own injunction to limit relief only to those Class 2 plaintiffs who received public cash assistance. The plaintiffs claim that the injunction granted relief to all illegal aliens who were discouraged from submitting an IRCA application on the basis that they had received any form of public assistance. Such a construction of the order is not supported by the record.
 
 
 21
 The record reveals that the claimed illegal regulations promulgated by the INS were all directed at illegal aliens who had received public cash assistance. The language used in each of the challenged regulations specifically referred to public cash assistance. See 8 C.F.R. § 245a.2(d)(4) (alien must show a history of employment without the receipt of public cash assistance); 8 C.F.R. 245a.1(i) (income or needs-based monetary assistance to include, but not be limited to, supplemental security income received by alien through federal, state or local programs designed to meet subsistence levels is public cash assistance). The plaintiffs are correct in noting that the district court order used the general term "public assistance" without identifying whether that included noncash assistance. However, read in the context of the whole case, it is clear that the term "public assistance" as used in the injunction was intended to refer only to public cash assistance because the challenged regulations only referred to public cash assistance. Therefore, the court did not err in construing its injunction and denying the contempt motion.
 
 CONCLUSION
 
 22
 This court has jurisdiction to consider this matter under our holding in Catholic Social Services. The district court did not err in extending the deadline for IRCA applications. The district court did not err in ordering discovery of the names of the Class 1 plaintiffs as the statute does not specifically prohibit judicial discovery as required by St. Regis. Finally, the district court did not err in denying the contempt motion as it correctly construed its injunction to be limited to Class 2 plaintiffs who had received public cash assistance.
 
 
 23
 Therefore, the judgment of the district court is hereby AFFIRMED.
 
 
 
 *
 Hon. Carl A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation