Xavier **FERNANDES**, Petitioner–
Appellee,

v.

Edward **McELROY**, Acting District Director, Immigration & Naturalization Service, New York Office; Immigration And Naturalization Service, Respondents–Appellants.

No. 243, Docket 96–2414.

United States Court of Appeals,
Second Circuit.

Argued Aug. 27, 1997.

Decided Feb. 17, 1998.

---

Diogenes P. Kekatos, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty. for S.D. of New York, James A. O'Brien III, Special Asst. U.S. Atty., Steven M. Haber, Asst. U.S. Atty., on brief), for Respondents–Appellants.

Charles Grutman, New York City, for Petitioner–Appellee.

Before: MESKILL and JACOBS, Circuit Judges, and KORMAN,* District Judge.

JACOBS, Circuit Judge:

The Immigration and Naturalization Service ("INS") appeals from a judgment of the United States District Court for the Southern District of New York (Preska, *J.*) granting Xavier Fernandes' petition for a writ of habeas corpus and vacating exclusion and deportation orders that the INS had entered against him. After the notice of appeal was filed, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, 110 Stat. 3009–546 (1996) ("IIRIRA"). Section 377 of IIRIRA retroactively amended § 245A(f)(4) of the Immigration Reform and Control Act of 1986 ("IRCA"), a provision which governs judicial review of applications for legalization under § 245A of IRCA. The amendment terminated the jurisdiction of the federal courts over any claim or cause of action by a person "asserting an interest" under § 245A of IRCA, unless that person comes within either of two exceptions. Although Fernandes is "asserting an interest" under IRCA, it is unclear whether Fernandes is within one of the exceptions. We therefore vacate and remand, without consideration of the merits, so that the district court may determine whether, after IIRIRA, it has jurisdiction to hear Fernandes' petition.

## BACKGROUND

In May 1992, Xavier Fernandes, a citizen of India then residing in the United States, traveled to India for the stated purpose of caring for his ailing brother. Fernandes returned to the United States approximately two months later. Upon his arrival at JFK International Airport in New York, Fernandes failed to produce any valid documentation showing that he was entitled to enter the country; instead he proffered an expired employment authorization card. Thereupon, Fernandes was detained by immigration officials and was placed in exclusion proceedings.

At the hearing, the Immigration Judge found that Fernandes had been properly placed in exclusion proceedings because (1) although Fernandes was an applicant for legalization under IRCA, he had failed to secure advance parole from the INS before leaving the country as was required by INS regulations, *see* 8 C.F.R. § 245a.2(m)(1) (1997), and (2) Fernandes had neither an immigrant visa or nonimmigrant visa in his possession upon his return to the United States. Once placed in exclusion proceedings, the burden was upon Fernandes to prove that he was not subject to exclusion under the Immigration and Nationality Act. *See* Immigration and Nationality Act § 291, 8 U.S.C § 1361 (1994). The Immigration Judge found that Fernandes failed to meet this burden. At the hearing, Fernandes' lawyer had addressed Fernandes' status as an applicant for legalization under IRCA and the reason for his trip to India, but the Immigration Judge refused to consider those arguments on the ground that they were within the exclusive jurisdiction of the Legalization Unit of the INS. Accordingly, the Immigration Judge found that Fernandes was excludable, and ordered that he be deported. *See* 8 U.S.C. § 1182(a) (1994). The

---

* Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

Board of Immigration Appeals subsequently dismissed Fernandes' appeal.

Fernandes then petitioned the United States District Court for the Southern District of New York for a writ of habeas corpus. Judge Preska granted the petition after concluding, *inter alia*, that (1) the INS' advance parole requirement was invalid as applied to Fernandes; (2) that Fernandes' trip to India was "brief, casual, and innocent" within the meaning of 8 U.S.C. § 1255a(a)(3)(B); and (3) that Fernandes was therefore entitled to re-enter the United States without complying with the documentation requirements of 8 U.S.C. § 1182(a)(7)(A)(i). *See Fernandes v. McElroy*, 920 F.Supp. 428, 448 (S.D.N.Y.1996). The exclusion and deportation orders were vacated and Fernandes was ordered restored to his status as an applicant for legalization under IRCA. *Id.* at 449.

After the Government filed its notice of appeal, Congress enacted IIRIRA. Section 377(a) of IIRIRA terminates the federal courts' subject matter jurisdiction over legalization-related claims arising under IRCA unless the claimant either (i) had filed an application for legalization under IRCA by May 4, 1988 (something Fernandes did not do); or (ii) had attempted to file a complete application and fee that a legalization officer had refused to accept (something Fernandes may or may not have done). *See* 8 U.S.C. § 1255a(f)(4)(C) (West Supp.1997). In addition, Congress declared that the new provision was to be effective "as if included in" the enactment of IRCA in 1986. IIRIRA, § 377(b), 110 Stat. at 3009–649.

## DISCUSSION

A. *IRCA's Legalization Program and Subsequent Litigation.*

The alien legalization program established by IRCA in 1986, and the subsequent litigation challenging the INS regulations implementing that program, form the necessary context for the jurisdiction-limiting provision of IIRIRA. IRCA offered amnesty to illegal aliens who had been continuously residing unlawfully in the United States since January 1, 1982. These aliens could apply for temporary resident status, and then, after a one-year wait, apply for permanent resident status. To be eligible for temporary resident status, it was necessary to show that the alien (i) had resided continuously in the United States in an unlawful status since January 1, 1982; (ii) had been continuously physically present in the United States since November 6, 1986 (the date of the enactment of IRCA); and (iii) would have been otherwise admissible as an immigrant. 8 U.S.C. § 1255a(a)(2)-(4) (1994). An alien seeking legalization under IRCA was also required to file an application with the INS between May 5, 1987 and May 4, 1988. *See* 8 U.S.C § 1255a(a)(1); 8 C.F.R. § 245a.2(a)(1) (1997).

Two large class actions arose out of the IRCA legalization program and the INS regulations issued to implement it. The first, *Catholic Social Services, Inc. v. Meese*, 685 F.Supp. 1149 (E.D.Cal.1988), *aff'd sub. nom. Catholic Social Services, Inc. v. Thornburgh*, 956 F.2d 914 (9th Cir.1992), *vacated sub nom. Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (hereinafter "*CSS*"), challenged the INS's interpretation of IRCA's requirement that applicants prove their "continuous physical presence" in the United States since November 6, 1986. In order to "mitigate this requirement," *CSS*, 509 U.S. at 47, 113 S.Ct. at 2490, Congress created an exception for "brief, casual, and innocent" absences, which would be deemed not to interrupt an alien's otherwise continuous physical presence. *See* 8 U.S.C. § 1255a(a)(3)(B) (1994). The INS construed this exception to mean that an absence would be deemed "brief, casual, and innocent" only if an alien had obtained permission from the INS before leaving the country. An alien who failed to obtain this "advance parole" from the INS would become ineligible for legalization. *CSS*, 509 U.S. at 47, 113 S.Ct. at 2490.

The plaintiffs in the *CSS* class action challenged the advance parole requirement, arguing that it was an impermissible interpretation of IRCA. The United States District Court for the Eastern District of California agreed, invalidated the advance parole requirement, *see id.*, 685 F.Supp. at 1159–60, and required the INS to extend the deadline

for legalization applications for class members who knew of the advance parole regulation, but who concluded that they would be ineligible for legalization, and who therefore did not file a timely application. *CSS*, 509 U.S. at 48–49, 113 S.Ct. at 2491.

The second class action (of which Fernandes claims to be a member), concerns an INS regulation interpreting IRCA's "continuous unlawful residence" requirement. *League of United Latin American Citizens v. INS*, No. 87–4757, 1989 WL 252578 (C.D.Cal.1989), *aff'd sub. nom. Catholic Social Services, Inc. v. Thornburgh*, 956 F.2d 914 (9th Cir.1992), *vacated sub nom. Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (hereinafter "*LULAC*"). This requirement, like the "continuous physical presence" requirement challenged in the *CSS* class action, contained an exception for brief trips abroad. The INS regulation challenged by the *LULAC* plaintiffs provided that the continuous unlawful residence requirement would be defeated if an alien travelled abroad and then re-entered the United States by presenting documents that were "facially valid." The INS reasoned that the use of such documents rendered an alien's subsequent presence in the United States "lawful" for the purposes of § 245A of IRCA. *CSS*, 509 U.S. at 49–50, 113 S.Ct. at 2491–92. The United States District Court for the Central District of California held that the regulation was invalid, and subsequently extended the deadline for legalization applications for class members who had failed to apply because they had been ineligible for legalization under the invalidated regulation. *Id.* at 52, 113 S.Ct. at 2491.

The INS appealed the district court decisions in *CSS* and *LULAC*, arguing (1) that the judicial review provisions of IRCA barred the district courts from exercising jurisdiction over the plaintiffs' claims; and (2) that the district courts erred in extending the application period beyond the 12–month period specified by Congress. The appeals were consolidated, and a panel of the Ninth Circuit affirmed. *Catholic Social Services, Inc. v. Thornburgh*, 956 F.2d 914, 923 (9th Cir.1992).

The Supreme Court granted certiorari for the purpose, *inter alia*, of resolving a conflict between circuits on the jurisdictional issue. As an initial matter, the Court rejected the INS's argument that IRCA § 245A(f)(1), which created an exclusive scheme for administrative and judicial review of any "determination respecting an application" under IRCA, precluded the district courts from exercising jurisdiction over an action challenging the legality of INS regulations. *CSS*, 509 U.S. at 56, 113 S.Ct. at 2495. However, the Court found another "jurisdictional hurdle" in the way of the *CSS* and *LULAC* plaintiffs: ripeness. *Id.*

The mere promulgation of the INS regulations did not give the *CSS* and *LULAC* class members ripe claims because the effects of the regulations were not "felt in a concrete way" by the class members. *Id.* at 57–58, 113 S.Ct. at 2495–96 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). The Court therefore concluded that "a class member's claim would ripen only once he took the affirmative steps that he could take before the INS blocked his path by applying the regulation to him." *CSS*, 509 U.S. at 59, 113 S.Ct. at 2496. A class member who succeeded in filing, but whose application was then formally denied by the INS by reason of the alien's failure to comply with the challenged regulation, would thus fulfill the ripeness requirement. *Id.* at 60, 113 S.Ct. at 2497.

The Court surmised, however, that some potential applicants for legalization under IRCA who took every necessary affirmative step may have had their applications rejected for filing under the INS's "front-desking" policy. *Id.* at 61–62, 113 S.Ct. at 2497–98. Under this policy, INS employees reviewed applications before accepting them for filing; if an alien was ineligible for legalization because, for example, the alien failed to obtain advance parole before leaving the country, the INS would refuse to accept the application for filing. The Court concluded that

[A] class member whose application was "front-desked" would have felt the effects of the "advance parole" or "facially valid document" regulation in a particularly concrete manner, for his application for legali-

zation would have been blocked then and there; his challenge to the regulation should not fail for lack of ripeness.

*Id.* at 63, 113 S.Ct. at 2498. In a footnote, the Court noted the possibility that other class members who were not literally "front-desked" might also have ripe claims:

> Although we think it unlikely, we cannot rule out the possibility that further facts would allow class members who were not front-desked to demonstrate that the front-desking policy was nevertheless a substantial cause of their failure to apply, so that they can be said to have had the "advanced parole" or "facially valid document" regulation applied to them in a sufficiently concrete manner to satisfy ripeness concerns.

*Id.* at 66 n. 28, 113 S.Ct. at 2500 n. 28. Ultimately, the Court found that there was insufficient evidence to support a decision as to whether any *CSS* or *LULAC* class members had actually been front-desked. Accordingly, it vacated the judgment of the Ninth Circuit and remanded the cases for a determination of whether any class members were in fact front-desked. *Id.* at 66–67, 113 S.Ct. at 2500. On remand, the district court in the *CSS* case modified the definition of the class to include persons who had been front-desked, as well as any persons within the ambit of footnote 28. *Catholic Social Services, Inc. v. Reno,* 134 F.3d 921, 923–24 (9th Cir.1998) (amended opinion).

### B.   *IIRIRA's Limit on Legalization Litigation.*

Against this backdrop, Congress enacted IIRIRA, including § 377(a), by which § 245A(f)(4) of the Immigration and Nationality Act was amended by adding the following paragraph:

> (C) JURISDICTION OF COURTS: Notwithstanding any other provision of law, no court shall have jurisdiction of any cause of action or claim by or on behalf of any person asserting an interest under this section unless such person *in fact filed* an application under this section within the period specified by subsection (a)(1) of this section, *or attempted to file a complete*

> *application and application fee with an authorized legalization officer of the Service but had the application and fee refused by that officer.*

IIRIRA § 377(a), codified at 8 U.S.C. § 1255a(f)(4)(C) (West Supp.1997) (emphasis added). Section 377(b) further provided that "[t]he amendment made by subsection (a) shall be effective as if included in the enactment of the Immigration Reform and Control Act of 1986." IIRIRA, 110 Stat. at 3009–649. The Conference Report explains that § 377 was intended "to put an end to litigation seeking to extend the amnesty provisions" of IRCA, and "to limit claims under that section to aliens who in fact filed an application for legalization ... within the prescribed time limits, or attempted to do so but their application was refused by an immigration officer." H.R. Conf. Rep. No. 104–828, at 230 (1996), reproduced at 1996 WL 563320.

### C.   *Jurisdiction Over Fernandes' Petition After IIRIRA.*

The jurisdiction of the district court over Fernandes' petition thus depends on (a) whether Fernandes is "asserting an interest" under § 245A of IRCA (8 U.S.C § 1255a); and, (b) if so, whether Fernandes in fact filed an application within the specified period or "attempted to file a complete application and application fee with an authorized legalization officer of the Service but had the application and fee refused by that officer." IIRIRA § 377(a), 8 U.S.C. § 1255a(f)(4)(C). It is undisputed that Fernandes is indeed "asserting an interest" under § 245A of IRCA. But there may be an unresolved question of fact regarding whether Fernandes actually attempted to file an application and was "front-desked" by an INS legalization officer.

■ Although Fernandes' claim arises by way of a petition for a writ of habeas corpus challenging the INS's exclusion and deportation orders, it is nonetheless a "claim by [a] person asserting an interest" under IRCA. The basis for Fernandes' petition is that his status as an applicant for legalization under § 245A of IRCA, and his membership in the *LULAC* class, entitled him (1) to make a "brief, casual, and innocent" trip abroad without obtaining advance parole from the

INS, and (2) to re-enter the United States by producing only an expired work authorization card as evidence of his legalization status. Insofar as Fernandes' arguments are based upon his status under § 245A of IRCA, Fernandes is "asserting an interest" under that section. At oral argument, Fernandes' counsel admitted as much, referring to § 245A of IRCA as codified at 8 U.S.C. § 1255a:

Q: [Fernandes'] status in the class action is based upon what statutory authority?

A: 1255.

Q: ... So, his status under 1255 was evidenced by this expired document.

A: Yes, Your Honor.

Q: And therefore your argument in this case is based upon his status under 1255a.

A: Yes, Your Honor.

Q: The only interest therefore that your client is asserting is an interest under 1255a.

A: Yes, Your Honor. Absolutely.

It is also clear that Fernandes did not file an application for legalization within the specified period. Under the regulations promulgated pursuant to IRCA, legalization applications had to be filed between May 5, 1987, and May 4, 1988. *See* 8 U.S.C. § 1255a(a)(1); 8 C.F.R. § 245a.2(a)(1) (1997). Fernandes filed his application for legalization on December 21, 1989. *Fernandes v. McElroy,* 920 F.Supp. 428, 434 (S.D.N.Y. 1996).

However, a factual question arose at oral argument as to whether Fernandes was front-desked by an INS legalization officer. The following exchange took place between the Court and Fernandes' counsel:

Q: [W]hy don't we just concentrate on Mr. Fernandes. There's a window of time under the statute—May 5, 1987 to May 4, 1988—what did he do during that period, if anything, to perfect or achieve rights under the program?

A: An affidavit was put in by my office that he in fact tried to comply with the requirements prior to the end of the period—

Q: What does that mean he "tried to comply"? What did he do?

A: He went and tried to put in his case—

Q: ... He went *where* and tried to put in *what?*

A: An application. He went to an immigration office and tried to put in an application but was turned away. He was turned away because he ... had applied for and received a ... visa to come back to the United States.

Q: And the evidence for that is an affidavit put in by your office. Who signed it?

A: I believe I did.

Q: Now were you there at the time that he tried to put the application in?

A: I was there in the office when he told me he did—

Q: So, in other words, you know as much about it as I would if your client told me about it.

A: That's correct.

Q: Why didn't your client put in this affidavit?

A: The court had asked for an affidavit from us and we put in the affidavit, in the lower court.

Q: Why didn't he tell the man on the street and then you [could] put in the affidavit from the man on the street? The next person passing by? What good is an affidavit from you when you don't know anything other than what someone else told you? How could you even sign such an affidavit?

A: As I remember it—and this goes back a while—I was requested by the court to put in a tender of proof that would be proven by my client. And I did so. I responded to the court as they asked.

We have been unable to locate any such affidavit or tender of proof in the record on appeal. (Counsel's reference to a visa is unexplained). Counsel for the INS advised the Court at oral argument that he was unaware of any affidavit and that Fernandes was claiming for the first time that he had been front-desked. Finally, we note that

Fernandes' attorney did not assert that Fernandes was front-desked in his brief on appeal, even though he explicitly addressed the applicability of IIRIRA to this case.

We lack the necessary tools to determine whether Fernandes in fact "attempted to file a complete application and application fee with an authorized legalization officer of the Service but had the application and fee refused by that officer." IIRIRA § 377(a), 8 U.S.C. § 1255a(f)(4)(C) (West Supp.1997). Nor can we tell whether the district court requested a submission on the subject, or whether counsel for Fernandes complied, or by what submission. The district court was not required to determine whether Fernandes was front-desked as described in § 377(a) because IIRIRA was enacted after the district court granted Fernandes' petition.[1] Indeed, the government admitted at oral argument that it would be necessary to remand the case for the district court to determine if Fernandes did in fact attempt to file an application with the INS:

Q: So is this something that, if one accepts your interpretation of the statute as being applicable here, we're going to have to send back to the district court to determine whether or not he actually filed?

A: That would be correct your honor if the court felt that jurisdiction—that that was the critical issue . . .

Q: [Fernandes is] saying that he was front-desked, that's what he's saying.

A: He's claiming now for the first time that he tried to timely file.

Therefore, we cannot conclusively determine whether § 377(a) deprives the district court of jurisdiction over Fernandes' petition, and instead must remand the case to the district court to determine whether Fernandes attempted to file a completed application and was in fact front-desked by an INS legalization officer. If the district court determines that Fernandes was not front-desked as described in § 377(a), the district court must dismiss Fernandes' petition for

lack of jurisdiction. In addition, if the district court finds that representations on that subject are frivolous or without basis in fact, we recommend that the district court consider imposing appropriate sanctions. . .

Finally, we note that Fernandes challenges § 377(a) of IIRIRA as an unconstitutional attempt to limit the jurisdiction of the federal courts. However, § 377(a) has not yet been applied to Fernandes, and he has not felt effect of § 377 "in a concrete way," *CSS*, 509 U.S. at 57–58, 113 S.Ct. at 2495–96. That will happen only if the district court finds that Fernandes was not front-desked and dismisses his petition for lack of jurisdiction. *See id.* at 59–60, 113 S.Ct. at 2496–97. Fernandes' challenge to the constitutionality of § 377(a) therefore is not ripe for review.

## CONCLUSION

The judgment granting Fernandes' petition for a writ of habeas corpus is vacated, and the case is remanded to the district court to determine whether, following the enactment of IIRIRA, it has subject matter jurisdiction to hear Fernandes' petition.

---

1. In considering Fernandes' petition, the district court did conclude that the Board of Immigration Appeals' denial of Fernandes' legalization application (as part of its order of exclusion), had "an effect equivalent to a front-desking." *Fer-*nandes, 920 F.Supp. at 443. But that characterization was made before enactment of IIRIRA, which does not recognize anything that could be deemed "constructive front-desking."