976 F.2d 1198
 LEGALIZATION ASSISTANCE PROJECT OF the LOS ANGELES COUNTY
FEDERATION OF LABOR (AFL-CIO); United California
Mexican-American Association; Travelers and Immigrants Aid
of Chicago; African Community and Information Center, Inc.;
American G.I. Forum; Coalition for Fair Immigration
Reform, Los Angeles; Hermandad Mexicana Nacional; One Stop
Immigration; International Institute (San Francisco);
International Institute (East Bay); Chinese American
Citizens Alliance, Plaintiffs-Appellees,
v.
IMMIGRATION AND NATURALIZATION SERVICE; Alan C. Nelson,
Commissioner, INS; Edwin Meese; U.S. Attorney
General; U.S. Department of State,
Defendants-Appellants.
LEGALIZATION ASSISTANCE PROJECT OF the LOS ANGELES COUNTY
FEDERATION OF LABOR (AFL-CIO); United California
Mexican-American Association; Travelers and Immigrants Aid
of Chicago; African Community and Information Center, Inc.;
American G.I. Forum; Coalition for Fair Immigration
Reform, Los Angeles; Hermandad Mexicana Nacional; One Stop
Immigration; International Institute (San Francisco);
International Institute (East Bay); Chinese American
Citizens Alliance, Plaintiffs-Appellees,
v.
IMMIGRATION AND NATURALIZATION SERVICE; Alan C. Nelson,
Commissioner, INS; Edwin Meese, U.S. Attorney
General; U.S. Department of State etc.
et al., Defendants-Appellants.
LEGALIZATION ASSISTANCE PROJECT OF the LOS ANGELES COUNTY
FEDERATION OF LABOR (AFL-CIO); United California
Mexican-American Association; Travelers and Immigrants Aid
of Chicago; African Community and Information Center,
Inc.; American G.I. Forum; Coalition for Fair Immigration
Reform, Los Angeles; Hermandad Mexicana Nacional; One Stop
Immigration; International Institute (San Francisco);
International Institute (East Bay); Chinese American
Citizens Alliance, Plaintiffs,
and
Coalition for Fair Immigration Reform, Los Angeles;
Hermandad Mexicana Nacional; One Stop
Immigration; International Institute
(San Francisco), et al.,
Plaintiffs-Appellants,
v.
IMMIGRATION AND NATURALIZATION SERVICE; Alan C. Nelson,
Commissioner, INS; Edwin Meese, U.S. Attorney
General; U.S. Department of State,
Defendants-Appellees.
LEGALIZATION ASSISTANCE PROJECT OF the LOS ANGELES COUNTY
FEDERATION OF LABOR (AFL-CIO); United California
Mexican-American Association; Travelers and Immigrants Aid
of Chicago, Plaintiffs-Appellants,
v.
IMMIGRATION AND NATURALIZATION SERVICE; Alan C. Nelson,
Commissioner, INS; Edwin Meese, U.S. Attorney
General; U.S. Department of State,
Defendants-Appellees.
 Nos. 89-35345, 89-35593, 89-35613 and 89-35706.
 United States Court of Appeals,
Ninth Circuit.
 Argued May 10, 1990.
Submission Deferred June 26, 1990.
Resubmitted Sept. 1, 1992.
Decided Sept. 18, 1992.
 
 Peter A. Schey, Nat. Center for Human Rights and Constitutional Law, Los Angeles, Cal., and Robert Pauw, Washington Immigration Project, Washington Ass'n of Churches, Robert H. Gibbs, Law Office of Robert H. Gibbs, Seattle, Wash., for plaintiffs-appellees-appellants.
 Michael Rubin, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, Cal., for plaintiffs-appellees.
 Donald E. Keener, Office of Immigration Litigation, Civil U.S. Dept. of Justice, Washington, D.C., for defendants-appellants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before: FARRIS, PREGERSON, and FERGUSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 OVERVIEW
 
 1
 Congress passed The Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. 99-603, to create a comprehensive program to regulate immigration to the United States. One of IRCA's main purposes is to grant legalization to certain groups of illegal aliens with longstanding residence in the United States.
 
 
 2
 To achieve that purpose, IRCA provides that persons who have lived continuously and unlawfully in the United States since January 1, 1982 may become lawful permanent residents if they satisfy certain conditions. The Immigration and Naturalization Service ("INS") has statutory authority to promulgate regulations establishing criteria and procedures for the legalization process.
 
 
 3
 In 1988, several individuals and organizations filed suit in federal district court challenging INS policy and regulations on numerous statutory and constitutional grounds. The plaintiffs to that action included five individual nonimmigrants[1] and seven organizations that assist nonimmigrants throughout the legalization process.[2] Their challenge to INS policy and regulations focused on the agency's interpretation of the statutory requirement that a nonimmigrant must have lived continuously and unlawfully in the United States since January 1, 1982 to qualify for legalization under IRCA.
 
 
 4
 The district court granted both declaratory and injunctive relief, but on a narrower basis than requested by plaintiffs. The district court also granted the government's motion for a stay of all relief pending appeal to this court.
 
 
 5
 We deferred our own decision in this case because important jurisdictional issues were then pending before the United States Supreme Court and two panels of our circuit.[3] Those cases have now been decided, supplemental briefs were filed by the parties, and this case was resubmitted for decision on September 1, 1992. We have reviewed the parties' numerous contentions and the district court's published and unpublished decisions. We affirm in part, reverse in part, and remand to the district court for further proceedings.
 
 DISCUSSION
 
 6
 I. Jurisdiction, Exhaustion of Remedies, and Standing
 
 A. Subject Matter Jurisdiction
 
 7
 The INS contends that the district court lacked subject matter jurisdiction to review the plaintiffs' challenges to INS policy and regulations. The contention is without merit.
 
 
 8
 This issue has been resolved by the Supreme Court's decision in McNary v. Haitian Refugee Center, Inc., 498 U.S. 499, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), and by our recent decisions in Zambrano v. INS, 972 F.2d 1122 (9th Cir.1992), and in Catholic Social Services, Inc. v. Thornburgh, 956 F.2d 914 (9th Cir.1992). Both the Supreme Court in McNary and our court in Zambrano and in Catholic Social Services concluded that the district court had jurisdiction to review INS regulations promulgated under IRCA. See McNary, 498 U.S. at ----, 111 S.Ct. at 897 (district court had jurisdiction to review INS procedures for evaluating applicants for amnesty under IRCA's Special Agricultural Worker program); Zambrano, 972 F.2d at 1124 (district court had jurisdiction to review INS regulation interpreting IRCA standard for admissible aliens); Catholic Social Services, 956 F.2d at 919-21 (district court had jurisdiction to review INS regulations interpreting IRCA requirement for continuous physical presence in the United States). In all of these cases, the statutory provisions for judicial review in IRCA were found to allow federal district courts to hear broad-based constitutional and statutory challenges to INS regulations.[4]
 
 
 9
 In the present case, the statutory provision for judicial review is identical to that construed in Zambrano and Catholic Social Services. Our own case law therefore dictates the conclusion that the district court had subject matter jurisdiction to hear plaintiffs' challenges to INS regulations.[5]
 
 B. Exhaustion of Remedies
 
 10
 The INS argues on appeal that the district court should not have granted relief because the remedies available to legalization applicants under IRCA have not been exhausted. The district court rejected the agency's arguments about exhaustion on the ground that the organizational plaintiffs have no remedies to exhaust under IRCA. On appeal, the INS contends that individual applicants should have to exhaust their statutory remedies and that the district court's analysis of the exhaustion issue does not address this contention.
 
 
 11
 We review the district court's decision de novo, Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir.1992), and conclude that requiring individual applicants to exhaust their statutory remedies would serve no useful purpose here.
 
 
 12
 The purpose of exhaustion is to allow administrative agencies to complete their own decisionmaking procedures and to discourage premature judicial intervention. The INS argues that judicial review is premature because the agency has not completed its process of adjudicating individual applications for legalization.
 
 
 13
 The agency's argument is beside the point. The organizational plaintiffs have presented broad-based statutory and constitutional challenges to INS regulations. The organizational plaintiffs are not requesting that the court review individual applications. As to the issues presented by the organizational plaintiffs in this case, the INS has already completed its decisionmaking process.
 
 
 14
 Requiring individual applicants to exhaust administrative remedies before the organizational plaintiffs may bring broad-based statutory and constitutional challenges makes little sense. The statutory remedies available to individual applicants provide no real opportunity to present the complex constitutional and statutory issues involved here. It is unreasonable to expect individual applicants who are often not represented by counsel to press such arguments. Moreover, individuals who do raise broader challenges to agency regulations do not have remedies in the administrative appeals process that are equivalent to those available in federal court. INS adjudicators are not empowered to invalidate agency regulations.[6] Agency adjudicators reviewing statutory or constitutional challenges that might arise in an individual case must review those challenges on the basis of a limited administrative record.[7] The only other opportunity for an alien to challenge INS regulations is to surrender for deportation and then appeal the deportation order in federal court. See 8 U.S.C. §§ 1105a, 1255a(f)(4) (1988). Furthermore, IRCA provides no remedies either to the organizations who are plaintiffs to this action or to those aliens discouraged from applying for legalization because of putatively invalid regulations. Finally, where the INS's interpretation of the statute is clear, we need not wait for the agency to adjudicate individual applications to be able to review broad-based challenges to INS policy and regulations such as those presented here by the organizational plaintiffs.
 
 
 15
 We agree with the district court that judicial review of plaintiffs' challenges to INS policy and regulations is not premature. We also agree with the district court that waiting for the agency to adjudicate individual cases before reviewing INS regulations could cause considerable hardship to applicants.
 
 C. Organizational Standing
 
 16
 The INS maintains on appeal that the seven organizational plaintiffs do not meet the requirements for organizational standing. The agency contends that INS regulations caused no injury to the plaintiff organizations and that IRCA was not intended to protect these organizations in any event.
 
 
 17
 The district court rejected these arguments and denied the government's motion to dismiss. We review the district court's decision de novo and agree that the requirements for organizational standing were met in this case. See United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Ins. Corp. of America, 919 F.2d 1398, 1399 (9th Cir.1990) (standing is a question of law reviewed de novo).
 
 
 18
 To establish standing, the organizational plaintiffs must plausibly allege that an agency's illegal action is the cause of some threatened or actual injury to the organization and that this injury can be remedied by the court. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The organizational plaintiffs must also show that their injury is within the zone of interests protected or regulated by the statute. Valley Forge, 454 U.S. at 475, 102 S.Ct. at 760; McMichael v. County of Napa, 709 F.2d 1268, 1270 (9th Cir.1983).
 
 
 19
 The record demonstrates that INS regulations for eligibility criteria caused harm to the organizations by draining organizational resources and impairing their ability to assist and counsel nonimmigrants. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982) (standing found for organizations on the basis of concrete and demonstrable injury caused by regulations that drained organizational resources); Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 937-39 (D.C.Cir.1986) (same).
 
 
 20
 The plaintiff organizations fall squarely within the zone of interests protected by IRCA. The organizational plaintiffs provide services to an identifiable group of individuals that Congress specifically intended organizations such as these to represent.[8] Moreover, the zone of interests requirement for standing is not particularly stringent, and is meant only to preclude standing for those whose interests are "so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." Clarke v. Securities Industry Association, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987).
 
 II. Statutory and Procedural Background
 
 21
 IRCA requires nonimmigrant aliens to show that they lived continuously and unlawfully in the United States as of January 1, 1982 to qualify for legalization. 8 U.S.C. § 1255a(a)(2) (1988).[9] Under the statute, an alien can meet this requirement by showing that his or her unlawful status was "known to the government" as of January 1, 1982. 8 U.S.C. § 1255a(a)(2)(B) (1988).
 
 
 22
 The INS promulgated regulations interpreting the statutory requirements of "continuous unlawful residence" and "known to the government." See 8 C.F.R. §§ 245a.1(d), 245a.2(b) (1992). Plaintiffs challenged those regulations in federal district court on both statutory and constitutional grounds.
 
 
 23
 The district court granted plaintiffs' request for declaratory relief. The court also issued injunctive relief, though not to the full extent requested by plaintiffs.
 
 
 24
 On appeal, the agency maintains that its policies and regulations are valid and that the district court exceeded its authority to grant relief in any event. The plaintiffs assert on cross-appeal that the district court erred by denying some of the injunctive relief requested.
 
 
 25
 We discuss these contentions below as they affect three different categories of nonimmigrants. The category designations group together nonimmigrants who, as a consequence of some putatively invalid INS regulation, were or may be wrongfully denied legalization under IRCA. The category designations used here are for convenience only. They are not statutory or regulatory classifications.
 
 
 26
 We review the propriety of the district court's grant of declaratory relief de novo. Fireman's Fund Ins. Co. v. Ignacio, 860 F.2d 353, 354 (9th Cir.1988). The grant or denial of injunctive relief rests within the sound discretion of the trial court. We will not reverse or modify an injunction in the absence of a clear abuse of discretion by the district court. E. & G. Gallo Winery v. Gallo Cattle Co., 955 F.2d 1327, 1344 (9th Cir.1992) (citing Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir.1985), cert. denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986)).
 
 III. Category One: Section 265 Nonimmigrants
 
 27
 This first category includes nonimmigrants who failed to comply with the registration requirements of section 265 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1305 (1976) (amended 1982). Under section 265, nonimmigrants were required to register with INS by January 30 of each year and to notify INS of their address at the end of each three-month period.
 
 
 28
 Plaintiffs argued before the district court that noncompliance with section 265 should satisfy some of the statutory requirements for legalization under IRCA. In particular, plaintiffs urged that failure to comply with section 265 was sufficient to show that these nonimmigrants were unlawful residents of the U.S. and that their unlawful status was "known to the government" within the meaning of IRCA. Accordingly, plaintiffs argued that INS policy[10] was invalid because it did not permit this group of nonimmigrants to satisfy IRCA legalization requirements by showing that they failed to comply with the registration and notice requirements of section 265.
 
 
 29
 The INS responded to plaintiffs' contentions before the district court by arguing that it had no settled policy regarding section 265 nonimmigrants. Specifically, the INS contended that its interpretation of the statutory requirement of "known to the government" was still too unsettled to form a basis for judicial review. Accordingly, the INS argued that the plaintiffs' contentions regarding section 265 nonimmigrants were not ripe for judicial review. As an alternative position, the INS argued before the district court that its interpretation of IRCA was valid in relation to section 265 nonimmigrants.
 
 
 30
 The district court rejected the agency's contentions. The court found that the agency had a set policy regarding section 265 nonimmigrants. The district court further concluded that INS policy regarding section 265 nonimmigrants was inconsistent with congressional intent and granted both declaratory and injunctive relief in favor of plaintiffs.
 
 
 31
 Before our court, the INS continues to assert the positions it argued in district court.
 
 A. Ripeness
 
 32
 The INS argues on appeal that it has no settled policy dictating how the "known to the government" requirement for legalization under IRCA will be applied to section 265 nonimmigrants.
 
 
 33
 The district court concluded that agency policy regarding how the "known to the government" requirement would apply to section 265 nonimmigrants was "sufficiently concrete" to warrant adjudication. Immigration Assistance Project of the Los Angeles County Federation of Labor v. INS ("Immigration Assistance I "), 709 F.Supp. 998, 1004 (W.D.Wash.1989), amended by Immigration Assistance II, 717 F.Supp. 1444 (W.D.Wash.1989). We review the district court's decision de novo. Southern Pacific Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). To determine ripeness, we evaluate "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).
 
 
 34
 We agree with the district court that the issues presented by the organizational plaintiffs regarding section 265 nonimmigrants are ripe for judicial review. Pursuant to its clear statutory duty, the INS has developed regulations and policies that apply to section 265 nonimmigrants.[11] Those regulations and policies are not so unsettled as to preclude judicial review at this stage. Moreover, our conclusion that the agency has a settled policy regarding section 265 nonimmigrants remains unchanged whether we examine the published regulations or a so-called "new standard" that the agency says it is following.[12]
 
 
 35
 The INS's argument that its policy regarding section 265 nonimmigrants is not sufficiently settled to permit judicial review fails for several reasons.
 
 
 36
 First, the published regulations are clear on their face that section 265 nonimmigrants will be denied legalization. As written, the regulations simply will not allow applicants to use their previous noncompliance with section 265 as a means of proving that their unlawful status was "known to the government." 8 C.F.R. § 245a.1(d) (1992).[13] This regulation remained in effect for at least eleven of the twelve months that nonimmigrants had to apply for legalization. Thus, the INS had a concrete policy in 8 C.F.R. § 245a.1(d) that excluded section 265 applicants during most of the amnesty application period. Those section 265 nonimmigrants who relied on the INS regulation and did not apply for legalization can certainly show that their claims are ripe for judicial review.
 
 
 37
 Second, it is clear that the "new standard," as interpreted by the INS, will preclude legalization for section 265 nonimmigrants. According to the INS's own information wire, the agency interprets its "new standard" to preclude section 265 applicants from eligibility.[14]
 
 
 38
 Third, the district court found that INS legalization officers had informed both the organizations that process applications and individual nonimmigrants that section 265 applicants would be denied. Immigration Assistance I, 709 F.Supp. at 1001. Indeed, this evidence was sufficiently persuasive for the district court to conclude that summary judgment for the plaintiffs was appropriate because of the high probability that section 265 nonimmigrants would be denied legalization. Immigration Assistance I, 709 F.Supp. at 1001.
 
 
 39
 Fourth, the district court pointed out that the INS's claim that it has no settled policy is belied by its own arguments that section 265 violators do not qualify for legalization under the "known to the government" standard. Furthermore, the agency's steadfast refusal over the past four years to adjudicate cases involving 265 applicants is hardly convincing evidence that the INS's true position on section 265 applicants remains unsettled. While evidence that the agency actually denied some section 265 applicants would strengthen a conclusion that the INS has a settled policy, such proof is not a prerequisite for ripeness. This is particularly true in the present case where the agency has purposefully refused to adjudicate individual applications.
 
 
 40
 We are not persuaded that ripeness is destroyed in this case by the possibility asserted by the INS that it may promulgate additional regulations in the future. The agency was required by statute to promulgate regulations defining eligibility criteria for legalization under IRCA before the application period would begin. If we allow the possibility that an agency may promulgate additional regulations in the future to dictate our decisions on ripeness, then an administrative agency's regulations could forever escape judicial review. The doctrine of ripeness is not intended to promote an absurd result.[15]
 
 
 41
 As a final consideration, we note that the district court was especially concerned with hardship to applicants who are served by the organizational plaintiffs. We also recognize that the organizations who assist nonimmigrants through the legalization process would share that hardship. Moreover, from the standpoint of those organizations, the issues presented are ripe for judicial review.
 
 
 42
 The organizations allege that agency policy interpreting the statutory requirement of "known to the government" makes it difficult for them to advise legalization applicants and to disseminate accurate information. While section 265 nonimmigrants wait for the INS to adjudicate their applications, the organizations must monitor all cases for possible wrongful denials, further draining their limited resources. Finally, as the district court noted, denying judicial review at this stage would as a practical matter foreclose any opportunity for the plaintiff organizations to pursue broad-based statutory and constitutional challenges to INS policy. District Court Order, November 3, 1988 at 12.
 
 B. Declaratory Relief
 
 43
 The INS argues in the alternative before this court as it did before the district court that its existing policy regarding section 265 nonimmigrants is valid. The agency maintains that a nonimmigrant's failure to file an address report as required by section 265 does not satisfy the statutory requirement for legalization that a nonimmigrant must have lived continuously and unlawfully in the United States as of January 1, 1982. Specifically, the INS contends that a nonimmigrant's failure to file address reports is not sufficient to meet either of two statutory criteria for proving continuous unlawful residence: (1) proof of unlawful status, or (2) proof that the nonimmigrant's unlawful status was "known to the government."
 
 
 44
 The district court ruled to the contrary on both of the INS's contentions about the validity of its policy towards section 265 nonimmigrants. We agree with the district court.
 
 
 45
 First, the district court correctly noted that a nonimmigrant who violated 8 U.S.C. § 1305 (section 265 of the Immigration and Naturalization Act) faced criminal penalties and deportation. Immigration Assistance I, 709 F.Supp. at 1001; see 8 U.S.C. § 1306(b) (1988) (defining penalties for violating section 265)); Fong v. INS, 308 F.2d 191, 193 (9th Cir.1962) (alien deportable for failing to file pursuant to section 265). Because of the drastic consequences that aliens would suffer by violating section 265, the government's argument that noncompliance with that section may not prove unlawful status is unavailing.[16]
 
 
 46
 Second, the district court concluded that section 265 violations were "known to the government" precisely because the INS had no periodic address report on file for the alien as required by statute and regulation. We agree with the district court's conclusion.
 
 
 47
 The record shows that before January 1, 1982, the INS reviewed agency records to determine whether nonimmigrants had complied with the reporting requirements under section 265. The absence of the required section 265 report identified those in violation.
 
 
 48
 As a consequence of its own practices, the INS had actual knowledge of an alien's unlawful status. The government's argument about imputing knowledge of unlawful status from evidence of a section 265 violation is unpersuasive.
 
 
 49
 Finally, our reading of IRCA's legislative history supports the district court's conclusion that INS policy regarding section 265 violators is not consistent with congressional intent. The legislative history demonstrates that the House Judiciary Committee was concerned that "[u]nnecessarily rigid demands for proof of eligibility could seriously impede the success of the legalization effort." H.R.Rep. No. 682, 99th Cong., 2d Sess., pt. 1, at 73 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5677. Furthermore, Congress expected "the INS to incorporate flexibility ... permitting the use of affidavits of credible witnesses and taking into consideration the special circumstances relating to persons previously living clandestinely in this country." H.R.Rep. No. 682, 99th Cong., 2d Sess., pt. 1, at 73 (1986), 1986 U.S.C.C.A.N. 5677. Finally, the legislative history of IRCA shows that Congress believed that "the legalization program should be implemented in a liberal and generous fashion...." H.R.Rep. No. 682, 99th Cong., 2d Sess., pt. 1, at 72 (1986), 1986 U.S.C.C.A.N. 5676.[17] The district court properly concluded that INS policy represents an overly restrictive interpretation of IRCA because it would preclude section 265 nonimmigrants from proving that their unlawful status was "known to the government."
 
 C. Injunctive Relief
 
 50
 The INS argues that the district court erred when it issued injunctive relief that required the agency to use a particular procedure[18] under which nonimmigrants could prove that their unlawful status was "known to the government." We disagree with the agency's contention and conclude that the district court in establishing such procedure properly exercised its discretion to structure equitable relief.
 
 
 51
 The district court established a procedure whereby nonimmigrants who violated section 265 by failing to file an address report every three months could prove that their unlawful status was "known to the government." The district court fashioned relief in this form because section 265 violators face a difficult task to prove that their unlawful status was known to the government. Merely proving that they failed to comply with section 265 would be difficult enough because government notices of violation are generally destroyed after two years.
 
 
 52
 The INS contends that only the agency may create specific proof requirements to effectuate IRCA's legalization program. We disagree.
 
 
 53
 The procedure developed by the district court is consistent with the purpose of the legalization provisions in IRCA and with Congress's intent in drafting them.[19] The district court properly exercised its broad discretionary power to fashion equitable relief that would offer a fair and workable mechanism for section 265 nonimmigrants to prove that their unlawful status was "known to the government." See Haitian Refugee Center, Inc. v. Nelson, 694 F.Supp. 864, 881 (S.D.Fla.1988), aff'd 872 F.2d 1555 (11th Cir.1989), aff'd McNary, 498 U.S. 499, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (INS ordered to reconsider Special Agricultural Worker legalization denials with the proper standard of proof "which will require the government to present evidence to negate the just and reasonable inference[s]...." ); see also Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 558 (9th Cir.1990) (trial court is vested with broad discretionary power to structure equitable relief); cf. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358 n. 44, 360 n. 45, 361 n. 47, 97 S.Ct. 1843, 1866 n. 44, 1867 n. 45, 1868 n. 47, 52 L.Ed.2d 396 (1977) (judicially crafted shift of presumption furthers substantive command of Title VII).
 
 
 54
 On cross-appeal, plaintiffs argue that the district court abused its discretion when it declined to order the INS to adjudicate applications from section 265 nonimmigrants within 90 days of the district court's decision. The district court decided not to set the deadline requested by plaintiffs because it was reluctant to interfere with INS procedures for adjudicating individual cases.
 
 
 55
 Although plaintiffs raise valid concerns about harm to section 265 nonimmigrants which may result from any delay in INS adjudications, we find no abuse of discretion in the district court's decision. The district court did order the INS to notify these applicants if their case would not be resolved within 90 days of the date on which the district court enters its judgment.[20] We agree with the district court that this is an adequate remedy at this time.
 
 IV. Category Two Nonimmigrants
 
 56
 This second category of nonimmigrants consists of students and employees who violated the terms of their visas before 1982.[21] Under INS policy and regulations,[22] these nonimmigrants would qualify for amnesty only if they prove that the government knew of their unlawful status. 8 C.F.R. § 245a.2(b)(3) (1992). INS regulations did not apply this requirement to another group of students and employees.[23] Instead, INS regulations allowed this other group to satisfy IRCA's requirement of unlawful status merely by showing that their authorized stay in the United States had expired "through the passage of time" before 1982. 8 C.F.R. § 245a.2(b)(11)-(12) (1992); see 8 U.S.C. § 1255a(a)(2)(B).
 
 
 57
 Plaintiffs argued before the district court that INS regulations violated equal protection because the regulations treated similarly situated groups differently without any rational basis for doing so. The district court agreed and ordered the INS to apply a specific procedure to category two nonimmigrants under which they could prove unlawful status.[24]
 
 
 58
 The INS maintains on appeal that its regulations and policies constitute a reasonable interpretation of the statute and do not violate equal protection. Further, the agency argues that the procedure ordered by the district court is an abuse of discretion.[25]
 
 
 59
 The plaintiffs argue on cross-appeal that the district court erred because it granted this injunctive relief only to prospective category two nonimmigrants. Plaintiffs contend that relief should have been extended retroactively because some category two nonimmigrants were wrongfully denied legalization on the basis of the INS regulations found unconstitutional by the district court.
 
 A. Declaratory Relief
 
 60
 The INS contends on appeal that the district court erred because it did not defer to the agency's reasonable and constitutionally permissible interpretation of the statute. We disagree.
 
 
 61
 Under the equal protection clause of the Fifth Amendment, "[f]ederal classifications distinguishing among groups of aliens ... are valid unless [they are] 'wholly irrational.' " Sudomir v. McMahon, 767 F.2d 1456, 1464 (9th Cir.1985); Mathews v. Diaz, 426 U.S. 67, 82-83, 96 S.Ct. 1883, 1892-1893, 48 L.Ed.2d 478 (1976). The agency maintains that its regulations are constitutionally permissible because the two groups of immigrants who are subject to different proof requirements for showing unlawful status are not similarly situated.[26]
 
 
 62
 The district court found no rational basis between the two groups to justify requiring category two nonimmigrants to meet different proof requirements for showing unlawful status as compared to other nonimmigrant students and employees who were similarly situated.[27] Our own analysis of the regulations leads to the same conclusion.[28] The arguments advanced by the INS to the contrary are unpersuasive.[29]
 
 B. Injunctive Relief
 
 63
 The district court remedied the equal protection violation by ordering the INS to follow a specific procedure under which category two applicants could prove unlawful status.[30] The INS contends that the relief granted by the district court constitutes an abuse of discretion. We disagree.
 
 
 64
 Federal courts possess broad equitable powers to remedy constitutional violations. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); Haitian Refugee Center v. Smith, 676 F.2d 1023, 1041 (5th Cir.1982). We find in the present case that the district court acted within the scope of its authority to remedy a constitutional violation and that it properly did so in a manner which gives meaningful effect to the statute. See Haitian Refugee Center, Inc. v. Nelson, 694 F.Supp. at 881 (ordering INS to adopt proof procedure for implementing Special Agricultural Workers program under IRCA); International Brotherhood of Teamsters, 431 U.S. at 359 n. 45, 97 S.Ct. at 1867 n. 45. The procedure developed by the district court is consistent with Congress's intent that the IRCA legalization program be applied in a "liberal and generous fashion." H.R.Rep. No. 682, 99th Cong., 2d Sess. 72 (1986), 1986 U.S.C.C.A.N. 5676.[31]
 
 
 65
 Finally, plaintiffs argue that the district court erred in affording only prospective relief to applicants in category two. In support of this argument, plaintiffs offer evidence that the INS wrongly denied legalization to some applicants based on the proof requirement which the district court found to violate equal protection.
 
 
 66
 We therefore remand to the district court so that any category two applicants who may have been denied legalization as a consequence of invalid INS regulations may be identified, and granted appropriate relief.
 
 V. Category Three Applicants
 
 67
 This group includes nonimmigrants who were erroneously reinstated[32] to lawful status by the INS sometime after January 1, 1982. Initially, the INS took the position that such reinstatements after January 1, 1982 precluded a nonimmigrant from showing the requisite continuity of unlawful residence. In 1988, the agency's position changed when an INS adjudicator decided Matter of N, 19 I. & N. Dec. 760 (1988). In Matter of N, 19 I. & N. Dec. at 762, a Legalization Appeals Unit ("LAU")[33] held that a category three applicant who was reinstated to lawful status after misrepresenting material facts is still eligible for legalization if he or she meets the other statutory requirements under IRCA.
 
 
 68
 Until Matter of N was decided, the INS took the position that such reinstatements, though made erroneously, were enough to defeat the "continuous and unlawful residence" legalization requirement stated in 8 U.S.C. § 1255a(a)(2)(A) (1988). Before Matter of N was decided, the INS had maintained that category three applicants were ineligible for legalization under IRCA because the reinstatements precluded a showing that their residence in the United States was both continuous and unlawful.
 
 
 69
 The INS argued in district court that its change of position in Matter of N had the effect of mooting plaintiffs' request for injunctive relief. Plaintiffs contended before the district court that the INS has not applied its decision in Matter of N uniformly, leaving some category three applicants without relief. Furthermore, plaintiffs argued that some category three applicants who, before Matter of N was decided, may have been wrongfully denied legalization, are unaware that they may now be eligible for legalization under IRCA.
 
 
 70
 The district court agreed with plaintiffs. The court ordered the INS to review cases involving category three applicants who might have been wrongly denied legalization. On appeal, the INS maintains that the district court's injunction was unnecessary and overbroad.[34]
 
 
 71
 District courts have broad remedial powers to redress injuries caused by unlawful agency practices. Perales v. Thornburgh, 967 F.2d 798, 815 (2nd Cir.1992) (finding INS regulations invalid under IRCA, and setting new deadline for legalization applicants and ordering the INS to reopen files); Proyecto San Pablo v. INS, 784 F.Supp. 738, 748-49 (D.Ariz.1991) (ordering agency to reopen applications of those wrongfully denied legalization as a consequence of agency policy found invalid under IRCA); Haitian Refugee Center, Inc. v. Nelson, 694 F.Supp. at 880-81 (ordering the INS to vacate denials and reconsider applications). We do not find that the district court exceeded the scope of its authority in fashioning injunctive relief for category three nonimmigrants.
 
 
 72
 The district court granted injunctive relief in favor of plaintiffs for several reasons. First, the district court was persuaded that the policy change announced in Matter of N was applied unevenly. The court also noted that Matter of N may not provide a remedy for those category three nonimmigrants already prejudiced by the old policy. Finally, the court rejected INS arguments that court-ordered relief was unnecessary because category three nonimmigrants could request reconsideration of their applications and because the agency could reopen cases on its own initiative.
 
 
 73
 The district court properly rejected these arguments. Even if we agree with the INS that its current procedure would permit applicants to request that the agency reconsider applications if they were wrongfully denied,[35] we are not convinced that this procedure provides an adequate remedy.
 
 
 74
 The district court found agency procedures for reopening legalization applicants' files "incomprehensible," particularly for the majority of applicants who are not represented by counsel. See Immigration Assistance I, 709 F.Supp. at 1004. Plaintiffs also point out that many applicants will be unaware of the change in INS policy and procedures resulting from Matter of N and their implications. We agree with the district court that the burden of the agency's own invalid policies should not fall on individuals whose applications for legalization were wrongfully denied.[36]
 
 
 75
 Finally, the INS argues on appeal that category three applicants are not entitled to injunctive relief if they failed to file administrative appeals to challenge the agency's wrongful denial of their application for legalization. The agency relies on Pittston Coal Group v. Sebben, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988) to support its position.
 
 
 76
 The agency's reliance on Sebben is misplaced. The Supreme Court's decision in Sebben is inapposite. First, the plaintiffs in Sebben initially petitioned the district court for a writ of mandamus. The Court held that such relief was inappropriate. The Court emphasized the extraordinary nature of mandamus and concluded that it would order such relief only to compel performance of a "clear nondiscretionary duty." Sebben, 488 U.S. at 121, 109 S.Ct. at 424. By contrast, plaintiffs in the present case were awarded only declaratory and injunctive relief. Second, the Court in Sebben stressed that respondents would have been vindicated had they pursued administrative and judicial remedies. Sebben, 488 U.S. at 123, 109 S.Ct. at 424. In the present case, category three applicants who were wrongly denied legalization had slim prospects of winning an administrative appeal before the INS decided Matter of N.
 
 
 77
 Third, the Court's opinion in Sebben rested primarily on principles of res judicata. That principle is not operative in the present case. In Sebben, petitioners' failure to pursue administrative and judicial remedies made the agency's decision against them a final determination. In such cases, the agency's decision should bind individuals who fail to pursue their statutory remedies. By contrast, INS rulings on individual applications are not final determinations. For example, any applicant denied legalization may still seek review of a deportation order in federal circuit court. 8 U.S.C. §§ 1105a, 1255a(f)(4) (1988). Consequently, failure to follow prescribed administrative appeal procedures should not have the same preclusive effect.
 
 
 78
 Contrary to the agency's argument, Sebben does not preclude relief for category three applicants who were wrongly denied legalization but failed to appeal the agency's decision. The injunctive relief issued by the district court for category three applicants should apply to all individuals in this category whether or not they appealed the agency's decision.
 
 
 79
 VI. Injunctive Relief Applicable to All Categories
 
 A. Extension of Application Deadline
 
 80
 Plaintiffs asked the district court to establish new application deadlines[37] for all three categories of nonimmigrants who did not file for legalization because they believed or were told that they were ineligible based on INS regulations that the district court later found invalid. The district court held that the Supreme Court's decision in INS v. Pangilinan, 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988), precluded such relief.
 
 
 81
 On appeal, plaintiffs maintain that Pangilinan is distinguishable and that the district court has equitable power to extend application deadlines for nonimmigrants who were discouraged from applying for legalization by INS regulations.
 
 
 82
 We considered the question of the district court's authority to extend INS application deadlines for legalization under IRCA in our recent decision in Catholic Social Services, Inc. v. Thornburgh, 956 F.2d at 921-23. In that case, we held that the district court had authority to extend INS deadlines. We noted that extending the deadline was consistent with Congress's intent and distinguished the Supreme Court's decision in Pangilinan.[38] Catholic Social Services, 956 F.2d at 921-23. In particular, we emphasized that the statutory scheme considered in Pangilinan differed significantly from IRCA. See Catholic Social Services, 956 F.2d at 921-22.[39] Our recent decision in Zambrano v. INS, 972 F.2d at 1124-25, followed Catholic Social Services, and affirmed the district court's authority to extend application deadlines for legalization under certain provisions of IRCA.
 
 
 83
 The district court's authority to extend application deadlines in the present case is controlled by our decisions in Catholic Social Services and Zambrano. We therefore remand to the district court to reconsider plaintiffs' request for an extension of application deadlines in light of those decisions.[40]
 
 
 84
 B. Readmittance into the United States of Wrongfully
 
 Deported Nonimmigrants
 
 85
 Plaintiffs argue on appeal that the district court erred when it denied their request for an injunction ordering the INS to readmit nonimmigrants whose applications were wrongfully denied, and who were consequently deported, because of INS regulations now held to be invalid. We recognize that some courts have issued similar relief. See, e.g., Wiedersperg v. INS, 896 F.2d 1179, 1182 (9th Cir.1990) (alien deported following criminal conviction may re-enter the country after the conviction was vacated); Mendez v. INS, 563 F.2d 956, 959 (9th Cir.1977) (alien deported in proceeding which violated due process may re-enter country and reopen deportation proceeding). In the present case, however, plaintiffs have not sufficiently identified applicants in any of the three categories who are living outside the United States because they were wrongfully expelled. See Catholic Social Services, 956 F.2d at 923 (plaintiffs' parole request denied when they failed to identify any class member who qualified for exception to general rule that courts may not review deportation orders of those who have departed United States). Under these circumstances, we cannot conclude that the district court erred in denying the injunction requested by plaintiffs.
 
 CONCLUSION
 
 86
 For the reasons stated above, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.
 
 
 
 [1]
 Nonimmigrants referred to in this opinion are aliens in the United States on visas for a specific purpose and for a limited time
 
 
 [2]
 The original plaintiffs included several other organizations and individuals who are not parties to this appeal
 
 
 [3]
 See McNary v. Haitian Refugee Center, Inc., 498 U.S. 499, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); Zambrano v. INS, 972 F.2d 1122 (9th Cir.1992); Catholic Social Services v. Thornburgh, 956 F.2d 914 (9th Cir.), cert. granted, --- U.S. ----, 112 S.Ct. 2990, 120 L.Ed.2d 867 (1992)
 
 
 [4]
 In McNary, the Supreme Court construed 8 U.S.C. § 1160(e) (1988), and concluded that it did not preclude federal question jurisdiction in the district court. Zambrano and Catholic Social Services construed the same judicial review provision at issue in the present case. See 8 U.S.C. § 1255a(f) (1988); Zambrano, 972 F.2d at 1124; Catholic Social Services, 956 F.2d at 919
 
 
 [5]
 The INS argues that the district court did not have jurisdiction to issue an order in June 1989 once the government filed its notice of appeal from the district court's March 1989 order. This argument fails. The district court specifically noted that the March 1989 order was not a final judgment. See Immigration Assistance Project of Los Angeles County Fed'n of Labor v. INS ("Immigration Assistance II "), 717 F.Supp. 1444, 1446 n. 2 (W.D.Wash.1989). In a proceeding involving multiple claims and parties, district courts have authority to revise an order or other form of decision at any time before the entry of judgment adjudicating all claims, rights and liabilities of the parties. See Fed.R.Civ.P. 54(b); see also Fed.R.Civ.P. 62(c)
 
 
 [6]
 See Dastmalchi v. INS, 660 F.2d 880, 886 (3d Cir.1981); Matter of Fede, Interim Dec. 3106 (BIA May 11, 1989) at 2 (regulation promulgated by the Attorney General has the force and effect of law as to immigration judges; those judges do not have authority to consider challenges to regulations); Haitian Refugee Center, Inc. v. Civiletti, 503 F.Supp. 442, 469 (S.D.Fla.1980) (same)
 
 
 [7]
 Cf. McNary, 498 U.S. at ----, 111 S.Ct. at 898-99 (noting that constitutional and statutory challenges require development of substantial amount of evidence that is not usually available in the administrative record developed for an individual application)
 
 
 [8]
 Congress provided special status for community organizations so that they could assist the Attorney General "to encourage participation among undocumented aliens who fear coming forward...." H.R.Rep. No. 682, 99th Cong., 2d Sess., pt. 1, at 73 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5677; see also 8 U.S.C. § 1255a(c)(1)-(4) (1988)
 
 
 [9]
 To qualify for legal residency, aliens must also: (1) file a timely application; (2) maintain continuous physical presence in the United States from the effective date of IRCA, November 6, 1986, and (3) be otherwise admissible as an immigrant. 8 U.S.C. § 1255a(a)(1)-(4) (1988)
 
 
 [10]
 Throughout this section of the opinion, we refer to INS policy rather than INS regulations because the agency maintains that its published regulations are no longer a complete reflection of agency policy. Rather, the INS says that its policy regarding section 265 nonimmigrants is also governed by the standard that the district court imposed in Ayuda, Inc. v. Meese, 687 F.Supp. 650 (D.D.C.1988), vacated in part by Ayuda, Inc. v. Thornburgh, 880 F.2d 1325 (D.C.Cir.1989), vacated, --- U.S. ----, 111 S.Ct. 1068, 112 L.Ed.2d 1174 (1991). In its supplemental brief filed June 18, 1992, the INS stood by its assertion that it is still following the "new standard" it agreed to in Ayuda v. Meese even though that decision was since overturned by the D.C. Circuit on jurisdictional grounds
 We set out the INS's "new standard" in full in note 12 below.
 
 
 [11]
 IRCA provides that the Attorney General "shall broadly disseminate information respecting the benefits which aliens may receive under [IRCA] and the requirements to obtain such benefits" before the application period starts. 8 U.S.C. § 1255a(i) (1988)
 
 
 [12]
 In Ayuda v. Meese, the district court entered an order instructing the INS to follow a specific standard for interpreting the statutory requirement of "known to the government." That standard provided that:
 [A] nonimmigrant alien must establish that prior to January 1, 1982, documentation existed in one or more government agencies so that ... such documentation taken as a whole would warrant the finding that the nonimmigrant alien's status in the United States was unlawful. Said documentation must be in the files of the government prior to January 1982, or such other time as may be permitted by INS regulations. The burden is on the nonimmigrant alien to meet this standard.
 Ayuda v. Meese, 687 F.Supp. at 666-67.
 
 
 [13]
 INS regulations provide that an alien may prove that his or her unlawful status was known to the government only if:
 (1) The Service received factual information constituting a violation of the alien's nonimmigrant status from any agency, bureau or department, or subdivision thereof, of the Federal government ...
 (2) An affirmative determination was made by the Service prior to January 1, 1982 that the alien was subject to deportation proceedings. Evidence that may be presented by an alien to support an assertion that such a determination was made may include, but is not limited to, official Service documents issued prior to January 1, 1982 ...
 (3) A copy of a response by the Service to any other agency which advised that agency that a particular alien had no legal status in the United States or for whom no record could be found.
 (4) The applicant produces documentation from a school ... which establishes that the said school forwarded to the Service a report that clearly indicated the applicant had violated his or her nonimmigrant student status prior to January 1, 1982.
 
 
 [8]
 C.F.R. § 245a.1(d)(1)-(4)
 
 
 [14]
 The Associate Commissioner of the INS sent the organizations that assist nonimmigrants in the legalization process an information wire on April 13, 1988, notifying them of the new Ayuda v. Meese standard. This wire stated: "[T]he violation must be able to be induced [sic] from evidence submitted to Federal agencies only, and prior to January 1, 1982." Ayuda I, 880 F.2d at 1362 n. 14 (Wald, C.J., dissenting) (emphasis added). This correspondence shows that the INS would not consider the absence of a 265 report in the files as constituting sufficient knowledge by the agency of the nonimmigrant's unlawful status
 
 
 [15]
 We decline to adopt the approach taken by the majority in Ayuda I, 880 F.2d 1325 (D.C.Cir.1989). In Ayuda I, a panel of the D.C. Circuit issued a split opinion which concluded that the district court lacked jurisdiction to hear the case. The majority went on to conclude, as an alternative holding, that the issues presented regarding section 265 nonimmigrants were not ripe for review. Ayuda I, 880 F.2d at 1341-46
 The discussion of ripeness in Ayuda I and in Ayuda II is dicta. See Ayuda I, 880 F.2d at 1341; Ayuda II, 948 F.2d 742, 747. Our own analysis of ripeness in this case leads us to a contrary conclusion. Finally, two of our own decisions have resolved the initial question of jurisdiction differently from the majority's opinion in Ayuda I and Ayuda II. See Catholic Social Services, 956 F.2d 914; Zambrano, 972 F.2d 1122.
 
 
 [16]
 The INS makes the additional argument that a section 265 violation must be "willful," and not merely inadvertent, for it to be unlawful. The INS reasons that it could not have known, simply by looking at an alien's file, whether the alien's failure to file a section 265 report was "willful" and thus unlawful
 We disagree. Willfulness is not an element of a section 265 violation; instead, an alien threatened with deportation may merely invoke the absence of willfulness as an affirmative defense. The alien would have the burden of establishing this defense.
 
 
 [17]
 Indeed, the Judiciary Committee specifically drafted IRCA to incorporate those undocumented residents who have lived in the United States for a number of years and have established valuable ties with communities all around the country. One of the major purposes of IRCA was to eliminate an illegal subclass of people residing in this country. H.R.Rep. No. 682, 99th Cong., 2d Sess., pt. 1, at 49 (1986), 1986 U.S.C.C.A.N. 5653
 
 
 [18]
 The district court's order provided that the applicant would have the burden of making a prima facie showing that he or she violated the address reporting requirements. Once the applicant made this showing, the INS then would be required to introduce proof that the alleged section 265 violation and subsequent unlawful status was not known to the government. If the INS met this burden of production, the applicant would then have to show by a preponderance of evidence that he or she was in unlawful status and that this unlawful status was known to the government. The district court emphasized that an alien carries the burden of persuasion to prove eligibility for legalization at all times. Immigration Assistance II, 717 F.Supp. at 1448
 
 
 [19]
 See note 17 and accompanying text
 
 
 [20]
 The INS argues that the district court abused its discretion by ordering the agency to notify section 265 nonimmigrants if their applications would not be decided within 90 days after the district court's judgment. We find no abuse of discretion in the district court's decision. The notification requirement is not particularly burdensome to the agency and it mitigates the hardship of any delay in the agency's decisionmaking procedures. Moreover, the notification requirement gives section 265 applicants an opportunity to monitor agency compliance with the district court's order
 
 
 [21]
 Category two nonimmigrants consists of the following nonimmigrant aliens: (1) temporary employees admitted on "H" visas; (2) intra-company transferees admitted on "L" visas; and (3) students admitted on duration of status "F" visas who did not graduate before January 1, 1982
 
 
 [22]
 For this category of nonimmigrants, both the published regulations and the "new standard" apply. See note 12
 The INS has revised its regulations since they were first promulgated in 1987. Some of those revisions affect category two nonimmigrants. See 8 C.F.R. § 245a(1)(d)(4) (as amended in 1988). These revisions were in effect at the time the district court issued its decisions, and were incorporated into the district court's analysis of the plaintiffs' contentions regarding category two nonimmigrants. Similarly, our analysis of category two incorporates both the effect of the "new standard" and of the INS's revised regulations.
 
 
 [23]
 The other group consists of three types of nonimmigrants: (1) foreign government employees admitted on duration of status "A" visas; (2) representatives of international organizations admitted on duration of status "G" visas; and (3) students admitted on duration of status "F" visas who remained in the United States after they graduated
 
 
 [24]
 The district court's order granting injunctive relief would allow category two nonimmigrants to satisfy IRCA's unlawful status requirement for legalization either by showing that the government knew of the individual's unlawful status or by showing that their legal status expired "through the passage of time" within the meaning of 8 U.S.C. § 1255a(a)(2)(B) (1988)
 
 
 [25]
 In addition, the INS reasserts that the issues presented by organizational plaintiffs regarding category two nonimmigrants are not ripe for review. We disagree. INS policy regarding category two nonimmigrants is clear on the issues presented by the organizational plaintiffs here. The concreteness of INS policy is not undermined either by the INS's previous revisions to its regulations nor by the possibility that the agency may promulgate additional revisions in the future. As to the statutory and constitutional challenges presented by the organizational plaintiffs, INS policy is both concrete and settled
 
 
 [26]
 The INS's reliance on Fiallo v. Bell, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), is misplaced. Even federal regulatory classifications must have a rational basis to survive scrutiny under the equal protection clause of the Fifth Amendment. See Mathews, 426 U.S. at 83, 96 S.Ct. at 1893
 
 
 [27]
 For example, the district court concluded that no rational difference existed between a student who violates status by dropping out of school and an embassy employee who violates status by quitting work
 
 
 [28]
 For example, the two groups of students are similarly situated with respect to the very characteristic for which INS regulations distinguished them. The example is significant because students comprise the bulk of category two nonimmigrants
 INS regulations required one group of students to prove that their unlawful status was "known to the government" while the other had no such proof requirement. The group required to show proof were those students who violated their status before graduation. The group not required to show proof that their unlawful status was "known to the government" were those students who violated their status when they failed to leave the country and return home after graduation.
 Federal immigration regulations required schools to notify the INS if any of these individuals violated immigration laws. See 8 C.F.R. § 214.3(g) (1981) (requiring schools to report immediately to the INS those students who terminated their attendance or took too few units). Consequently, both groups of aliens are similarly situated with respect to IRCA's requirement for amnesty that their unlawful status be "known to the government." A different proof requirement for these two groups of students simply makes no sense and is unfairly burdensome.
 
 
 [29]
 For example, category two H visa and L visa employees (temporary employees and intra-company transferees, respectively) are identically situated to non-category two A and G visa employees (foreign government employees and representatives of international organizations, respectively) because both groups violate status if they remain in the United States after their term of employment. Yet only the H and L visa holders are required to prove that their unlawful status was "known to the government" before January 1, 1982. 52 Fed.Reg. 43,843 (1987) (codified at 8 C.F.R. § 245a.2(b)(11)-(12))
 
 
 [30]
 The district court's order would allow category two applicants to prove unlawful status if they first make a prima facie showing that they violated the terms of their visas. The INS would then have the burden to come forward with evidence either that unlawful status did not occur through "the passage of time" or that the individual's unlawful status was not "known to the government." See 8 C.F.R. § 245a.2(b)(2)-(3) (1992). If the INS comes forward with this evidence, then the applicants must show by a preponderance of the evidence that they are eligible for legalization under either the "passage of time" or "known to the government" standard. The district court emphasized that legalization applicants always have the burden of proving eligibility for legalization. See Immigration Assistance II, 717 F.Supp. at 1449; 8 C.F.R. § 245a.2(d)(5) (1992)
 
 
 [31]
 Moreover, the procedure developed by the district court properly reflects practical difficulties in remedying the constitutional violation and implementing the purpose of the statute. The standard developed by the district court reflected the difficulty faced by category two applicants to prove that their unlawful status was known to the government. Except in special circumstances, the INS routinely destroyed notices of violations after two years. An applicant's chances to prove that the government knew of their unlawful status is often further confounded because an employer or school that would have notified the INS of the violation may no longer exist or may not have the proper records. The procedure ordered by the district court both remedies the constitutional violation and recognizes the practical difficulties faced by these nonimmigrants. See Orantes-Hernandez, 919 F.2d at 558
 
 
 [32]
 The reinstatements were erroneous because they resulted either from the individual's fraud or misrepresentation or from mistake
 
 
 [33]
 The LAU is the final level of administrative appeals for legalization applicants
 
 
 [34]
 In addition, the INS reasserts its jurisdictional objections while disputing the scope of the district court's authority to grant equitable relief. As we noted in Part I, both the Supreme Court and our own circuit have held that federal courts have jurisdiction to hear broad statutory and constitutional challenges to INS regulations promulgated under certain provisions of IRCA
 
 
 [35]
 It is not clear that category three nonimmigrants may request that the INS reconsider their applications for legalization. The INS argues that its decision in Matter of O, 19 I. & N. Dec. 871 (1989) sets precedent that would allow category three applicants to make such a request. But as they currently exist, INS regulations do not themselves permit applicants to move for reconsideration. Rather, INS regulations provide that sua sponte review by the agency is purely discretionary and informal. See 8 C.F.R. §§ 103.5(b), 245a.2(q) (1992)
 
 
 [36]
 Plaintiffs have also asked us on appeal to order the INS to grant stays of deportation and issue temporary work permits to category three applicants who were wrongly denied legalization. The motion was presented in district court, but the merits were not decided on. On remand, the district court will have the opportunity to deal with plaintiffs' motion
 
 
 [37]
 The original application period began on May 5, 1987 and ended on May 4, 1988. 8 C.F.R. § 245.2(a) (1988)
 
 
 [38]
 In Pangilinan, 486 U.S. at 883-85, 108 S.Ct. at 2215-17, the Supreme Court held that federal courts do not have authority to extend deadlines for naturalization applicants under sections 701-705 of the Nationality Act of 1940, 8 U.S.C. §§ 1001-05 (Supp. V 1940)
 
 
 [39]
 We noted in Catholic Social Services, 956 F.2d at 921-22, that Pangilinan involved Congress's exclusive right under the federal constitution to grant naturalization. Furthermore, we noted that a court-ordered deadline was not consistent with Congress's intent underlying the 1940 Act
 
 
 [40]
 Because we conclude that the district court has authority to set a new application deadline, we need not reach plaintiffs' contentions on the issues of individual standing and class certification. The district court dismissed the individual plaintiffs on standing grounds on the assumption that the court had no authority to set a new application deadline. Similarly, the issue of class certification turns on the question whether the individual plaintiffs have standing in the first place. Because we conclude that the district court has authority to set a new application deadline, we leave any outstanding issues regarding individual plaintiffs for the district court to resolve